Argued and submitted January 5, 2015, affirmed May 4, 2016

Zeferino VASQUEZ,
*Plaintiff-Respondent,*
*v.*

DOUBLE PRESS MFG., INC.,
a California corporation,
*Defendant-Appellant.*

Multnomah County Circuit Court
110302844; A154774

372 P3d 605

Jonathan Henderson argued the cause for appellant. With him on the briefs were Elizabeth E. Lampson and Davis Rothwell Earle & Xochihua, P.C.

Mark G. McDougal argued the cause for respondent. With him on the brief were Gregory Kafoury and Kathryn Clarke.

Before Armstrong, Presiding Judge, and Hadlock, Chief Judge, and Egan, Judge.*

---

\* Hadlock, C. J., *vice* Nakamoto, J. pro tempore.

**EGAN, J.**

Defendant Double Press Mfg. appeals from a judgment for plaintiff, following a jury trial on a negligence claim. Plaintiff was severely injured when he was crushed by a hay-bale cutting machine while cleaning it. Defendant manufactured and sold the machine to plaintiff's employer. After a trial on plaintiff's negligence claim against defendant, the jury awarded plaintiff both economic and noneconomic damages, but found plaintiff 40 percent at fault for his injuries. On appeal, defendant raises two assignments of error. We reject defendant's second assignment of error without written discussion. In its first assignment of error, defendant contends that the trial court erred when it denied defendant's post-verdict motion to reduce the jury's award of noneconomic damages to $500,000, based on ORS 31.710(1).[1] Plaintiff responds that applying the statutory limit on noneconomic damages would violate his right to a jury trial—Article I, section 17, of the Oregon Constitution[2]—and the prohibition on re-examination of facts found by a jury—Article VII (Amended), section 3, of the Oregon Constitution.[3] The trial court denied defendant's motion based on *Lakin v. Senco Products, Inc.*, 329 Or 62, 987 P2d 463, *clarified*, 329 Or 369, 987 P2d 476 (1999). We agree that *Lakin* is controlling and, accordingly, we affirm.

We set out the facts consistently with the jury's verdict. *See Mead v. Legacy Health System*, 352 Or 267, 269 n 2, 283 P3d 904 (2012); *Delaney v. Taco Time Int'l.*, 297 Or 10, 12, 681 P2d 114 (1984). Defendant manufactures and sells agricultural machinery. OR PAC Feed & Forage LTD, the

---

[1] ORS 31.710(1) provides:

"Except for claims subject to ORS 30.260 to 30.300 and ORS chapter 656, in any civil action seeking damages arising out of bodily injury, including emotional injury or distress, death or property damage of any one person including claims for loss of care, comfort, companionship and society and loss of consortium, the amount awarded for noneconomic damages shall not exceed $500,000."

[2] Article I, section 17, provides that "[i]n all civil cases the right to trial by jury shall remain inviolate."

[3] Article VII (Amended), section 3, provides that in "actions at law" the right to trial by jury "shall be preserved," and that "no fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict."

employer of plaintiff, purchased a bale-cutting machine from defendant, and defendant installed the machine. Plaintiff's job duties included operating and cleaning hay out of and around the bale cutting machine. Plaintiff operated the machine from a control panel located at the control tower. Before plaintiff cleaned hay out of or around the machine, he pushed a button on the control panel to switch the machine from automatic to manual mode. In addition to switching the machine to manual mode, there was a "lockout/tagout" safety procedure. Under that procedure, an operator shuts off the power source supply with a lock and key and takes the key so that only one person has access to the power supply while working on the machine.

On March 31, 2010, plaintiff left the control tower to ask his cousin whether his shift was over. Plaintiff did not turn off and lock out the machine, nor did he switch the machine from automatic mode to manual mode. When plaintiff's cousin confirmed that his shift was over, plaintiff began to clean the machine. While cleaning the machine—removing jammed material from the exterior—plaintiff was "crushed by a 'pinch point' created by a hydraulic ram moving against the exterior framework" of the machine. A "pinch point" is a place on the machine "where two pieces of material come together."[4]

Plaintiff was severely injured. Plaintiff's neurosurgeon testified that plaintiff was "essentially cut in half, right through the base of the spine" and that the machine "broke his bones and crushed his spine and tore soft tissue." As a result of the injury plaintiff is permanently paraplegic.

Plaintiff filed an action against defendant, alleging claims for negligence and products liability, and subsequently amended his complaint to proceed on his negligence claim alone. Before trial, defendant moved for partial summary judgment to limit plaintiff's noneconomic damages to $500,000 under ORS 31.710(1). Relying on *Lakin*, the trial court denied defendant's motion for summary judgment, explaining, "For now I'm going to consider *Lakin* to be binding on" the issue of noneconomic damages.

---

[4] Defendant acknowledged that the "pinch point" was unnecessary to the operation of the machine.

At trial, plaintiff testified that he was partially at fault for his injuries. Based on that admission, defendant moved for a directed verdict to cap plaintiff's noneconomic damages. The trial court denied that motion, again relying on *Lakin*:

"[*Lakin*] itself was a products liability case. There was no privity of contract. I believe the finding of the jury was that the plaintiff was contributorily or comparatively negligent, and the Oregon Supreme Court struck the statutory—or the noneconomic damages cap in that case. That is binding precedent on me and I think resolves completely those motions, so those motions are denied.

"* * * * *

"Okay. I mean, I think [*Lakin*] is—I don't think the discussion of the remedies clause is at all relevant to the jury trial right, which was resolved in [*Lakin*], and I don't think the recent case law with respect to the remedies clause has application here.

"The Supreme Court said, or other like cases, and obviously found a products liability case with a comparatively negligent plaintiff to be in that category[.]"

The jury returned a verdict in plaintiff's favor for $2,231,817 in economic damages and $8,100,000 in noneconomic damages, but found plaintiff 40 percent at fault for his injuries. Defendant moved to reduce the jury's award of noneconomic damages to $500,000 based on ORS 31.710(1), arguing that *Lakin* did not control. The trial court denied defendant's motion. The trial court then entered a judgment for plaintiff in the amount of $6,199,090.20, representing 60 percent of the total award from the jury—$4,860,000 of which are noneconomic damages.

Following the entry of judgment, defendant moved for judgment notwithstanding the verdict and a new trial, again arguing that ORS 31.710(1) applied. The trial court denied those motions without explanation.

On appeal, defendant assigns error only to the trial court's denial of its "post-verdict motion to apply the non-economic damages cap found in ORS 31.710(1) to the jury's award of noneconomic damages and reduce the award of

noneconomic damages." Defendant argues that the trial court erred because Article I, section 17, did not prevent application of ORS 31.710(1) to plaintiff's damages.

We turn to the merits of defendant's argument that the trial court erred when it denied defendant's post-verdict motion to apply ORS 31.710(1)—the $500,000 noneconomic damages cap—to the jury's award of noneconomic damages to plaintiff. "We review the trial court's ruling regarding the constitutionality of a statute for an error of law." *State v. Betnar*, 214 Or App 416, 419, 166 P3d 554 (2007); *State v. Rangel*, 328 Or 294, 298, 977 P2d 379 (1999).

We begin with a review of the Supreme Court cases under Article I, section 17 (*Lakin* and its progeny), to resolve this case.

In *Lakin*, the Supreme Court concluded that *former* ORS 18.560(1) (1999), *renumbered as* ORS 31.710(1) (2003), violated Article I, section 17, the right to a jury trial. 329 Or at 81. In that case, the plaintiffs, a worker and his wife, brought a negligence and products liability action against Senco, a nail gun manufacturer, after the worker was injured when the nail gun he was using double-fired and caused the worker to suffer severe injuries. *Id.* at 66-68. The trial court awarded economic, noneconomic, and punitive damages to plaintiff, but reduced the noneconomic damages to $500,000 for each plaintiff pursuant to the statutory cap, and reduced the worker's award by the jury's finding that he had contributed five percent to his injuries. *Id.* at 66-67. Both parties appealed. *Id.* at 67.

We affirmed Senco's appeal and affirmed in part and reversed in part the plaintiffs' cross-appeal. *Id.* We concluded that the statutory cap violated Article VII (Amended), section 3, by mandating an unconstitutional "re-examination" of a fact tried by a jury, adhering to our prior case, *Tenold v. Weyerhaeuser Co.*, 127 Or App 511, 873 P2d 413 (1994), *rev dismissed*, 321 Or 561 (1995). *Lakin*, 329 Or at 67.

The Supreme Court allowed Senco's petition for review and concluded that the statutory cap violated Article I, section 17, and did not address Article VII (Amended), section 3:

"We conclude that to permit the legislature to override the effect of the jury's determination of noneconomic damages would 'violate' plaintiffs' right to 'Trial by Jury,' guaranteed in Article I, section 17. Limiting the effect of a jury's noneconomic damages verdict eviscerates 'Trial by Jury' as it was understood in 1857 and, therefore, does not allow the common-law right of jury trial to remain 'inviolate.'"

*Lakin*, 329 Or at 79. The court reviewed the history of the right to a trial by jury and reiterated that "'[t]he amount of damages *** from the beginning of trial by jury, was a "'fact'" to be found by the jurors.'" *Id*. at 73 (quoting Charles T. McCormick, *Handbook on the Law of Damages* 24 (1935) (omission in *Lakin*)); *see also Molodyh v. Truck Insurance Exchange*, 304 Or 290, 297-98, 744 P2d 992 (1987) ("This right includes having a jury determine all issues of fact, not just those issues that remain after the legislature has narrowed the claims process. In many instances, the amount of the loss will be the only disputed issue.").

"The proper focus under Article I, section 17, is on the rights of the litigants and the proper role of the jury in a civil case. Here, the broad powers of the legislature must yield to a litigant's specific right to a 'Trial by Jury' guaranteed in Article I, section 17, as that right was understood in 1857. We conclude that Article I, section 17, prohibits the legislature from interfering with the full effect of a jury's assessment of noneconomic damages, at least as to civil cases in which the right to jury trial was customary in 1857, *or in cases of like nature.*"

*Lakin*, 329 Or at 78 (emphasis added). Thus, *Lakin* emphasized that "the broad powers of the legislature must yield to a litigant's specific right to a 'Trial by Jury'" in civil cases recognized at common law in 1857 or of like nature. Most importantly, the court's inclusion of "cases of like nature" indicates that the right to a jury trial is not confined to claims factually identical to those recognized at common law in 1857.

The analysis in *Lakin* has been reaffirmed by the Supreme Court in *Foster v. Miramontes*, 352 Or 401, 287 P3d 1045 (2012), and *Klutschkowski v. PeaceHealth*, 354 Or 150, 311 P3d 461 (2013).

In *Miramontes*, the Supreme Court concluded that "Article I, section 17, and Article VII (Amended), section 3, preserve the right to jury trial for claims that are properly categorized as 'civil' or 'at law.'" 352 Or at 426. In that case, the plaintiff filed a petition under ORS 30.866, seeking a stalking protective order and a judgment for compensatory money damages. *Id.* at 403. The defendant contended that he was "entitled to a jury trial on plaintiff's claim for compensatory money damages." *Id.* The plaintiff argued:

"[F]irst[,] * * * there is no constitutional right to a jury trial on a claim under ORS 30.866, because it is a newly created statutory claim, providing entirely new remedies, and, therefore, it is not 'of like nature' to any claim known at common law and triable to a jury then. [And] second * * * even if the constitutional right to jury trial can attach to a newly created statutory claim with no historical antecedent in the common law, it does not attach to this claim, because a claim under ORS 30.866 is, in essence, a claim in equity. * * * [T]he constitutional right to a jury trial does not extend to equitable claims, because, at the time of the Oregon Constitution's adoption in 1857, those claims would have been tried to the court without a jury."

*Id.* at 407-08. We had agreed with the plaintiff, concluding that the "plaintiff's monetary claim is unlike those customarily tried to juries at common law because it is 'not merely an assault or battery claim by another name.'" *Id.* at 426 (quoting *Foster v. Miramontes*, 236 Or App 381, 389, 236 P3d 782 (2010)).

Although the Supreme Court agreed that plaintiff's monetary claim was unlike those customarily tried to juries, the Supreme Court reversed, stating that "[t]he Court of Appeals erred in conditioning the right to jury trial on such a precise match between the elements of a current claim and those of a common-law predecessor." *Miramontes*, 352 Or at 426. The court further explained:

"Article I, section 17, and Article VII (Amended), section 3, preserve the right to jury trial for claims that are properly categorized as 'civil' or 'at law.' For the reasons that we have discussed, plaintiff's claim seeking monetary damage for injury inflicted fits within those terms, *even if it does not*

*have a precise historical analog.* We therefore hold that the Court of Appeals erred in reaching a contrary conclusion."

*Id.* (emphasis added). Whether a claim is civil or at law depends on the "nature of the relief requested"—that is whether the claim is legal or equitable—and the court concluded that "Article I, section 17, and Article VII (Amended), section 3, of the Oregon Constitution do not guarantee a right to jury trial for claims or request[s] for relief that, standing alone, are equitable in nature and would have been tried to a court without a jury at common law." *Id.* at 425. However, the plaintiff's claim seeking monetary damages for injury inflicted fit within a claim that is "civil" or "at law," without a precise historical analog.

Most recently, in *Klutschkowski*, the Supreme Court concluded that the application of ORS 31.710(1)—the non-economic damages statutory cap at issue here—would violate the plaintiff's right to a jury trial in a medical negligence case. First, the Supreme Court concluded that "an action for medical malpractice is one for which 'the right to a jury trial was customary in 1857,'" even though there was no precise analog to a claim by a child for negligence during its delivery in 1857. 354 Or at 177. Second, relying on *Lakin*, the court held, "It follows that applying ORS 31.710(1) to the jury's damages award in this case violates that constitutional guarantee. Having reached that conclusion, we need not address plaintiffs' arguments under Article I, section 10, or Article VII (Amended), section 3." *Id.*, 354 Or at 177.

To summarize, the case law establishes that plaintiff would be afforded a right to a jury trial under Article I, section 17, for "civil cases in which the right to jury trial was customary in 1857, or in cases of like nature." *Lakin*, 329 Or at 78. *Miramontes* and *Klutschkowski* reaffirmed that holding and further clarified that such a claim is not required to have a "precise historical analog."

We reject defendant's argument that the trial court erred in relying on *Lakin* to deny defendant's request to reduce the award of noneconomic damages.[5] Defendant

---

[5] Defendant highlights in his reply brief that *Horton v. OHSU, rev allowed, not yet decided* (Supreme Court No. S061992) is presently before the Supreme Court and contends that "many of the issues in *Horton* overlap with issues in

highlights that *Lakin* was decided two years before *Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 124, 23 P3d 333 (2001), which "engaged in a wholesale reevaluation of its remedy clause jurisprudence." *Howell v. Boyle*, 353 Or 359, 369, 289 P3d 1 (2013). Consequently, defendant argues that *Lakin* is not "particularly instructive regarding current remedy clause and jury trial clause jurisprudence" and argues that, instead, *Smothers* should apply to both Article I, section 10, and Article I, section 17. We reject defendant's argument that the *Smothers* paradigm applies to Article I, section 17, because, as discussed above, the Supreme Court has reaffirmed the *Lakin* analysis in recent years, and we are bound by that precedent. We agree with plaintiff that *Lakin* is controlling despite the fact that *Lakin* was decided two years before *Smothers*.

We also reject defendant's argument that *Lakin* is not applicable to this case because plaintiff's comparative fault and lack of privity with the manufacturer would have barred him from recovery at common law. Even if there was no comparative fault or privity requirement at common law in 1857, *Miramontes* and *Klutschkowski* confirm that the Supreme Court rejected "precise historical analogs" from 1857 to determine a party's right to a jury trial. The case law establishes that plaintiff would be afforded a right to a jury trial for "civil cases in which the right to jury trial was customary in 1857, or in cases of like nature." *Lakin*, 329 Or at 78. Here, plaintiff's claim is a civil case and the determination of damages in a personal injury case is a question of fact to be decided by a jury.

Accordingly, the trial court did not err when it denied defendant's post-verdict motion to apply ORS 31.710(1)—the

---

this case" and urged us to "review the briefing in that case, including the amicus briefs." Although *Horton* involves similar issues—whether the trial court erred by "concluding that the $3 million Oregon Tort Claims Act (OTCA) damages limit (ORS 30.271(3)(a)), was unconstitutional as [it] applied to all, or * * * parts of the jury's verdict pursuant to the following provisions of the Oregon Constitution: Article I, section 10; Article I, section 17; and Article VII (Amended), section 3"— we think that *Horton* is distinguishable from this case because, unlike in *Horton*, plaintiff challenges ORS 31.710(1), not the OTCA, and there is no claim of sovereign or discretionary immunity applicable to a public body. Moreover, the Supreme Court has not issued an opinion in *Horton*, and *Lakin* is controlling.

noneconomic damages cap—to the jury's award of noneconomic damages. Under *Lakin*, Article I, section 17, guarantees a jury trial in civil cases for which the common law provided a jury trial when the Oregon Constitution was adopted in 1857 and cases of like nature. The determination of damages in a personal injury case is a question of fact. Thus, in this context, applying ORS 31.710(1) would violate Article I, section 17.

Affirmed.