NAKAMOTO, J.
*1109 **611 Defendant Double Press Manufacturing, Inc. seeks review of a decision of the Court of Appeals affirming a trial court judgment against defendant that included an award of noneconomic damages to plaintiff in the amount of $4,860,000. Defendant contends that the Court of Appeals erred in concluding that the remedy clause of Article I, section 10, of the Oregon Constitution precluded a reduction of plaintiff's noneconomic damages to $500,000 in accordance with the statutory damages cap set out in ORS 31.710(1). Plaintiff requests review of another aspect of the decision, arguing that the Court of Appeals erroneously rejected his statutory argument that his claim was exempt from the damages cap. For the reasons set out below, we agree with plaintiff, and we affirm the judgment of the trial court and the decision of the Court of Appeals, but on different grounds, namely, that plaintiff's claim falls within a statutory exception to the damages cap for "claims subject to *** ORS chapter 656."
I. FACTS AND PROCEEDINGS BELOW
We recount the facts consistently with the jury's verdict. Mead v. Legacy Health System , 352 Or. 267, 269 n. 2, 283 P.3d 904 (2012). In the course of his employment with a feed dealer, plaintiff was responsible for operating and cleaning a machine used in hay baling. When plaintiff cleaned the machine, his usual procedure involved pushing a button on the control panel in the tower from which he operated the machine, switching the machine from automatic to manual mode. He would then shut off the power source supply with a key and remove the key.
One day in 2010, plaintiff did not follow that procedure. At the end of his shift, plaintiff did not switch the machine from automatic to manual mode, nor did he lock the machine. To remove jammed material, plaintiff climbed into an area of the machine where a hydraulic ram was located. The machine, still in automatic mode, pinched plaintiff between the hydraulic ram and the frame of the machine, crushing his spine and causing other injuries. As a result of those injuries, plaintiff is paraplegic. It is undisputed that, **612 because of his injuries at work, plaintiff received workers' compensation benefits from his employer's workers' compensation insurance carrier.
Plaintiff then brought this action against defendant, which had made, sold, and installed the machine. The case went to trial on plaintiff's claim that defendant had been negligent in designing, manufacturing, installing, or selling the machine. At trial, plaintiff acknowledged that he was partially at fault for his injuries because he had left the machine in automatic mode. The jury returned a verdict in plaintiff's favor in the amount of $2,231,817 in economic damages and $8,100,000 in noneconomic damages. The jury also found that plaintiff was 40 percent at fault for his injuries. In accordance with the verdict, the trial court reduced plaintiff's damages by 40 percent and entered a judgment *1110 in plaintiff's favor in the amount of $6,199,090.
Defendant moved for a judgment notwithstanding the verdict and a new trial. As it had argued in various motions before trial, defendant argued in part that, under ORS 31.710(1), plaintiff's noneconomic damages should be capped at $500,000. The trial court rejected that argument in light of this court's decision in Lakin v. Senco Products , Inc. , 329 Or. 62, 987 P.2d 463, modified , 329 Or. 369, 987 P.2d 476 (1999), in which this court had held that the $500,000 statutory cap on noneconomic damages, then codified as former ORS 18.560(1) (1999), violated the jury trial provision of Article I, section 17, of the Oregon Constitution.
After the trial court denied its post-trial motions, defendant appealed. The Court of Appeals affirmed, also based on this court's holding in Lakin . Vasquez v. Double Press Mfg., Inc. , 278 Or. App. 77, 372 P.3d 605 (2016). But the day after the Court of Appeals decided this case, this court overruled Lakin in Horton v. Oregon Health Science University , 359 Or. 168, 376 P.3d 998 (2016).
On reconsideration in light of Horton , the Court of Appeals withdrew its previous opinion and then addressed plaintiff's alternative bases for affirmance: that the noneconomic damages award in this case fell within an exception in ORS 31.710(1) and that the cap on noneconomic **613 damages found in ORS 31.710(1) violates the remedy clause of Article I, section 10, of the Oregon Constitution. Vasquez v. Double Press Mfg., Inc., 288 Or. App. 503, 406 P.3d 225 (2017). The Court of Appeals rejected the first of those arguments, but it agreed with the second and therefore affirmed the judgment. Id. at 512-26, 406 P.3d 225. In a concurring opinion, Judge Egan concluded that there was no need to reach the constitutional issue because plaintiff was correct that the noneconomic damages award fell within an exception to damages cap in ORS 31.710(1) for claims "subject to" ORS chapter 656, which concerns workers' compensation. Id. at 526-27, 406 P.3d 225 (Egan, J., concurring).
Defendant petitioned this court for review, arguing that the Court of Appeals had erred in its interpretation of Article I, section 10. Defendant argues that the Court of Appeals misapplied Horton (which had addressed not only Article I, section 17, but also the remedy clause in Article I, section 10 ) in concluding that the cap on noneconomic damages under ORS 31.710(1) violated the remedy clause as applied in the present case. In particular, defendant relies on a case from this court that predated Horton : Greist v. Phillips , 322 Or. 281, 906 P.2d 789 (1995). In Greist , this court held that the cap on noneconomic damages in ORS 31.710(1) (then codified as former ORS 18.560(1) ) did not violate the remedy clause, as applied to the facts of that case. Defendant also argues that the cap on noneconomic damages, which the legislature enacted in 1987, was a permissible quid pro quo for the legislature previously having expanded tort liability earlier in the century by allowing recovery in cases involving comparative negligence.
In response, plaintiff asserts that the Court of Appeals correctly applied Horton and concluded that application of the damages cap of ORS 31.710(1) under these circumstances violated Article I, section 10. In addition, plaintiff reasserts that, because the injury at issue in this case occurred in the course and scope of his employment, his claim against defendant was a third-party claim "subject to" various provisions of the workers' compensation laws in ORS chapter 656, and it therefore fell within the exception **614 provided in ORS 31.710(1), as Judge Egan had asserted in his concurring opinion in the Court of Appeals.[1]
II. ANALYSIS
As a general matter, this court will "avoid reaching constitutional questions in advance of the necessity of deciding them." State v. Barrett , 350 Or. 390, 397-98, 255 P.3d 472 (2011). Thus, if a statutory analysis will provide "a complete answer to the legal question that a case presents, we ordinarily decide the case on that basis, rather than turning to constitutional provisions." Rico-Villalobos v. Giusto , 339 Or. 197, 205, 118 P.3d 246 (2005). Following that practice, we *1111 turn to the question whether plaintiff is correct that his negligence claim against defendant was "subject to" ORS chapter 656 and, therefore, was not within the scope of the damages cap set out in ORS 31.710(1). As explained below, because we conclude that plaintiff's argument regarding ORS chapter 656 provides "a complete answer to the legal question" presented, we do not reach the parties' constitutional arguments, and we affirm the judgment of the trial court and the decision of the Court of Appeals on that alternative statutory basis.
A. Statutory Backdrop and Parties' Arguments
Under ORS 31.710(1), noneconomic damages in civil actions involving bodily injury are capped at $500,000, "[e]xcept for claims subject to ORS 30.260 to 30.300 and ORS chapter 656[.]" The workers' compensation laws found in ORS chapter 656 govern a no-fault compensation system that provides insurance coverage for workplace injuries and that generally precludes an injured worker from seeking other remedies against the employer.
Plaintiff argues that, although the present case is not a claim against his employer, it is nonetheless "subject to" ORS chapter 656, as that term is used in ORS 31.710(1). Plaintiff points out that numerous provisions within ORS chapter 656-other than those relating to workers' compensation insurance coverage-pertain to workers' rights **615 to recover tort remedies based on workplace injuries. See, e.g., ORS 656.020 (authorizing actions for damages against employers who are not in compliance with the workers' compensation laws, but abolishing historical defenses to such actions such as contributory negligence, the fellow-servant rule, and assumption of risk); ORS 656.154 (if workplace injury is due to negligence of third party other than employer or another employee, injured worker may elect to seek a remedy against third party); ORS 656.576 - 656.596 (containing numerous procedural and substantive provisions concerning actions brought against noncomplying employers and third parties).
Defendant, on the other hand, suggests that, when the legislature enacted ORS 31.710 in 1987, it would have understood that, in common legal parlance, a "claim" subject to ORS chapter 656 is simply a claim of an injured worker for workers' compensation insurance benefits authorized by ORS chapter 656 and provided by the employer's insurer (or the employer itself if it is self-insured[2] ) pursuant to the majority of the statutes located in ORS chapter 656. Defendant points out that the term "claim" is defined in part in ORS 656.005(6) (1985) by reference to "compensation," which in turn is defined as including benefits provided "by an insurer *** pursuant to this chapter." ORS 656.005(8) (1985). Thus, defendant reasons, a "claim" that is "subject to" ORS chapter 656 is one that seeks insurance benefits from the employers' insurer, and the reference in ORS 31.710(1) concerning claims "subject to" the workers' compensation laws is a reference only to such a claim.
In construing a statute, this court attempts to "ascertain the meaning of the statute most likely intended by the legislature that adopted it." State v. Cloutier , 351 Or. 68, 75, 261 P.3d 1234 (2011) (citing State v. Gaines, 346 Or. 160, 172, 206 P.3d 1042 (2009) ). In doing so, the court examines the text in context, as well as pertinent legislative history as needed. The text of a statute, though, is generally "the best evidence of the legislature's intent."
**616 PGE v. Bureau of Labor and Industries , 317 Or. 606, 610, 859 P.2d 1143 (1993). Because "[o]nly the text of a statute receives the consideration and approval of a majority of the members of the legislature," the text and context of a statute "remain primary, and must be given primary weight in the analysis." Gaines , 346 Or. at 171, 206 P.3d 1042. Thus, the court considers legislative history only "for what it's worth," and "what it is worth is for the court to determine." Id. Accordingly, we turn first to the text and context of the relevant statutes to discern what the legislature meant when it referred in ORS 31.710(1) to a "claim" that is "subject to" ORS chapter 656.
*1112 B. Text
Enacted in 1987, ORS 31.710(1) provides:
"Except for claims subject to ORS 30.260 to 30.300 and ORS chapter 656, in any civil action seeking damages arising out of bodily injury, including emotional injury or distress, death or property damage of any one person including claims for loss of care, comfort, companionship and society and loss of consortium, the amount awarded for noneconomic damages shall not exceed $500,000."
Or. Laws 1987, ch. 774, § 6. The question here is what was meant by "claims subject to *** ORS chapter 656." No statutory definitions were provided with that enactment, and thus we examine the ordinary meaning of the words used in the statute.
Although the parties primarily focus on the phrase "subject to," we find it helpful to begin with the term "claim." "Claim" is not defined for purposes of ORS 31.710(1). However, a "claim" is defined for purposes of ORS chapter 656 as "a written request for compensation from a subject worker or someone on the worker's behalf, or any compensable injury of which a subject employer has notice or knowledge." ORS 656.005(6) (1985). And, as defendant points out, throughout the workers' compensation statutes, "claim" most commonly refers to an injured worker's request for benefits from an employer's workers' compensation insurer.[3] Moreover, **617 defendant argues, the definition of claim refers to compensation from a workers' compensation insurer. Thus, defendant posits, a "claim" is simply a request for workers' compensation benefits for a compensable injury, and the 1987 legislature that enacted ORS 31.710(1) would have understood it to be so. For two reasons, though, we disagree with defendant's assertion.
First, defendant's argument that "claim" as defined by ORS 656.005(6) (1985) relates simply to requests for "compensation" as defined in ORS 656.005(8) (1985) is not textually supported. The definition in ORS 656.005(6) (1985) provides that a "claim" is "a written request for compensation from a subject worker or someone on the worker's behalf, or any compensable injury of which a subject employer has notice or knowledge." (Emphasis added.) Thus, a claim for purposes of ORS chapter 656 is not necessarily-or not only-a request for compensation made to a workers' compensation insurer; under the second part of the definition, it also may be a "compensable injury" of which the employer has notice or knowledge. See ORS 656.262 (1985) (requiring an employer to make a report of "any claims or accidents which may result in a compensable injury claim " (emphases added)). A "compensable injury" is defined, as pertinent here, as an accidental injury "arising out of and in the course of employment." ORS 656.005 (7)(a) (1985). Moreover, ORS 656.583(2) (1985), discussed in more detail below, which permits a workers' compensation insurer to compel an injured worker to elect a remedy, refers to "assertion of the claim against the third person by the injured worker." (Emphasis added.) Thus, contrary to defendant's assertion, the term "claim" as defined and used in ORS chapter 656 (1985) is not necessarily limited **618 to a request for workers' compensation benefits from an employer's insurer.
Second, the "claims" referred to in ORS 31.710(1) cannot simply be claims for workers' compensation benefits, because that statute also encompasses "claims subject to *1113 ORS 30.260 to 30.300," referring to the Oregon Tort Claims Act (OTCA), which governs certain types of actions against public bodies. The OTCA does not define the term "claim," and, moreover, its provisions do not use only the word "claim" when describing what is covered by the OTCA. Rather, they refer at various points not only to "claim," but also to "action," "suit," and "proceeding." See, e.g., ORS 30.265 (1985) (limiting scope of liability, and using terms "suit," "action" and "claim"), ORS 30.275 (1985) (concerning notice, and using both "action" and "claim" terminology); ORS 30.287 (1985) (using "action," "suit," "proceeding" and "claim").
Given the legislature's choice to use the word "claims" in ORS 31.710(1) in connection with two very different statutory schemes that themselves use the term "claim" in multiple ways, it does not appear that the legislature had in mind a particularly narrow or technical definition of "claim" when it enacted ORS 31.710(1). We thus look to the "ordinary meaning" of that term to determine legislative intent. See generally PGE , 317 Or. at 611, 859 P.2d 1143 ("[W]ords of common usage typically should be given their plain, natural, and ordinary meaning.").
The term "claim," as used in the context of personal injury, as it is not only in ORS 31.710(1) but also in the OTCA and ORS chapter 656, has a fairly well-established, if broad, meaning. It is, according to Webster's Third New Int'l Dictionary 414 (unabridged ed. 2002),
"a demand for compensation, benefits, or payment (as one made in conformity with provisions of the Social Security Act or of a workmen's compensation law, one made under an insurance policy upon the happening of a contingency against which it is issued, or one made against a transportation line because of loss occasioned by carrier negligence or overcharge)."
Similarly, it is defined by Black's Law Dictionary 224 (5th ed. 1979) as: "Cause of action. Means by or through which **619 claimant obtains possession or enjoyment of privilege or thing. Demand for money or property, e.g. insurance claim."
Under those definitions, a "claim" can be something like a workers' compensation claim, as defendant posits. But under those same definitions, it also can be a cause of action, such as one in tort for negligence. Given that ORS 31.710(1) uses the word "claims" in conjunction with workers' compensation statutes and statutes pertaining to causes of action in tort, nothing about that term, in itself, suggests that it would not apply to a cause of action for negligence such as that brought by plaintiff against defendant here. Cf. Bird v. Norpac Foods, Inc. , 325 Or. 55, 64, 934 P.2d 382 (1997) (concluding that "claim," as used in an Oregon Insurance Guaranty Association statute, had been used broadly to "refer simply to a generic assertion of a right to property or money arising out of a common injurious event" and thus could encompass both claims for workers' compensation benefits and tort claims).
That leads us to the next question: whether plaintiff's "claim" against defendant is one that is "subject to" ORS chapter 656. The Court of Appeals in the present case concluded that "subject to" meant "under the authority of" or "governed by" and that, though several statutes in ORS chapter 656 were relevant to plaintiff's claim, the claim was not "subject to" that chapter because a claim such as this "is kept entirely separate from the workers' compensation scheme." Vasquez , 288 Or. App. at 513, 406 P.3d 225 (citing Webster's at 2275). Thus, as we understand it, the Court of Appeals was of the view that a claim is not "subject to" ORS chapter 656 unless the sole source of authorization of such a claim is found in that chapter. See Vasquez , 288 Or. App. at 514, 406 P.3d 225 ("nothing in those provisions makes a third-party claim a claim that is under the authority of ORS chapter 656" (emphasis in original)). But, as plaintiff notes, "subject to," as defined in Webster's and elsewhere, is not necessarily so narrow as the Court of Appeals' opinion suggested.
Black's 1979 edition defines "subject to," as used in this context, as "governed or affected by." Black's at 1278 (emphasis added). And Webster's similarly describes those two meanings: first, the definition on which the Court of **620 Appeals relied ("1 : falling under or submitting to the power or dominion of another < children ~ to their parents> *** c : OBEDIENT , SUBMISSIVE < be ~ to the laws>") and, second, "likely to be *1114 conditioned, affected, or modified in some indicated way : having a contingent relation to something and usu[ally] dependent on such relation for final form, validity, or significance < democratic representatives whose acts are ~ to discussion and criticism -M.R. Cohen> < a treaty ~ to ratification>." Webster's at 2275. See also American Heritage Dictionary of the English Language 1735 (5th ed. 2011) (defining "subject [to]" as both "[b]eing in a position or in circumstances that place one under the power or authority of another or others" and "[c]ontingent or dependent").
Defendant counters that this court previously has construed the phrase "subject to" as meaning "pursuant to," citing Clarke v. OHSU , 343 Or. 581, 605 n. 13, 175 P.3d 418 (2007). Clarke concerned whether the OTCA violated the remedy clause of Article I, section 10, of the Oregon Constitution. In the course of discussing that question, this court described some aspects of Greist , 322 Or. 281, 906 P.2d 789, which had involved a claim "subject to" the damages cap currently codified at ORS 31.710(1). In a footnote in Clarke , this court said that " ORS 18.560 placed a limitation on noneconomic damage awards of $500,000 in all civil actions except for those brought pursuant to the Oregon Tort Claims Act and the Oregon Workers' Compensation Act." 343 Or. at 605 n. 13, 175 P.3d 418 (emphasis added). Clarke , however, did not concern that statute, and that footnote did not interpret it. Rather, the court gave a very abbreviated and cursory description of a statute that had been at issue in another case that it was discussing. Because this court in Clarke had no occasion to consider the meaning of the term "subject to," as used in ORS 31.710(1), we do not agree with defendant's suggestion that that footnote reflects any sort of statutory construction analysis that this court should treat as meaningful.
Accordingly, neither the ordinary meaning of "subject to" nor our prior case law indicates that the phrase, as used in the context of ORS 31.710(1), must refer to claims brought solely "under the authority of" the workers' compensation statutes, as the Court of Appeals concluded. Rather, that is one possible meaning, and the phrase is broad **621 enough to include also "affected by" or "modified by." And, if one of the latter meanings was intended by the legislature, it would be difficult to conclude that a claim against a third party concerning a workplace injury is not modified by or affected by numerous provisions found in ORS chapter 656, which are discussed in more detail below.
To summarize our review of the text of ORS 31.710(1), we conclude that the ordinary meanings of the terms "claim" and "subject to" are not dispositive here, nor does our prior case law meaningfully interpret those terms. The term "claim," as used in ORS 31.710(1), is used in a broad sense that encompasses not only claims for benefits from a workers' compensation insurer but also certain causes of action in tort, given that it applies to the OTCA. The term "claim" as used in the context of workers' compensation law generally refers to claims for workers' compensation insurance benefits, although ORS chapter 656 does not define it so narrowly, and in fact that chapter uses the term more broadly at some points. The phrase "subject to" might have the narrow meaning of "authorized by" or "under" as posited by the Court of Appeals, but it is equally possible that it has the broader meaning of "affected by" or "modified by," as recognized in the dictionary definitions quoted above. The bottom line is that the text of ORS 31.710(1), viewed in isolation, appears ambiguous.
C. Context
Going beyond the text, we now turn to the context for the exception to the noneconomic damages cap delineated in ORS 31.710(1). As pertinent here, context includes (1) ORS chapter 656, to which ORS 31.710(1) refers, and (2) the remainder of the 1987 enactment, see Owens v. Maass , 323 Or. 430, 434, 434 n. 5, 918 P.2d 808 (1996) (as part of context, this court considers all parts of law as enacted and contained in session laws). That context supports the broader meaning of the phrase "claims subject to ORS chapter 656" that plaintiff advances.
1. ORS chapter 656
We review ORS chapter 656 as it existed in 1987, when the legislature enacted the noneconomic damages cap **622 and its exception *1115 for certain claims in ORS 31.710(1).[4] Our review emphasizes the parts of ORS chapter 656 that concern actions such as the one brought here by plaintiff against defendant. We turn to the first significant aspect of ORS chapter 656 for purposes of understanding ORS 31.710(1) : the type of benefit that a worker receives for a compensable injury under the workers' compensation system.
The text of ORS 31.710(1) relates to the topic of noneconomic damages. Noneconomic damages, as defined by ORS 31.710(2)(b), and insurance benefits available via a claim for workers' compensation benefits, ORS 656.204 - 656.260, are mutually exclusive. That is, noneconomic damages are not available as workers' compensation benefits (which, in fact, closely resemble what are defined as "economic damages" in ORS 31.710(2)(a) ). Thus, it would have been pointless for the legislature to have exempted claims for workers' compensation benefits from the cap on noneconomic damages, because claims for workers' compensation benefits do not encompass noneconomic damages in any event. See generally State v. Clemente-Perez, 357 Or. 745, 755, 359 P.3d 232 (2015) (court will generally assume that the legislature "did not intend any portion of its enactments to be meaningless surplusage").
Addressing the fact that noneconomic damages are not available as workers' compensation benefits, defendant posits that its reading of ORS 31.710(1) is nevertheless correct because that statute operates to "clarify" that the "more specific" damages limitations found in ORS chapter 656 "continue to apply" to claims for workers' compensation benefits brought pursuant to ORS chapter 656. We have acknowledged that "nothing precludes the legislature from employing a measure of redundancy in its statutes; sometimes that is what is intended." Goodwin v. Kingsmen Plastering, Inc. , 359 Or. 694, 702, 375 P.3d 463 (2016). Nevertheless, the court will generally avoid construing a statute as redundant **623 "unless there is evidence that that is precisely what the legislature intended." Baker v. Croslin , 359 Or. 147, 157, 376 P.3d 267 (2016).
Redundancy, however, does not seem like a fully accurate description here, nor does the reference to ORS chapter 656 serve to "clarify" anything if defendant is correct and the reference is meant to pertain solely to claims for workers' compensation benefits. Rather than resolving an ambiguity, it creates one: If ORS 31.710(1) contained no reference to chapter 656, the insurance benefits available via the workers' compensation system would not be affected by a cap on noneconomic damages. Put another way, if defendant is correct, the legislature inserted something into ORS 31.710(1) that bore no relation to its subject-matter of noneconomic damages. If the terms "claims" and "subject to *** ORS chapter 656" are given the narrow meaning of claims for workers' compensation insurance benefits, then the inclusion of those terms in ORS 31.710(1) is, at best, not only redundant but confusing, because ORS 31.710(1) involves a restriction on noneconomic damages that are not available in a claim for workers' compensation benefits in any event.
Bearing in mind that "an interpretation that renders a statutory provision meaningless should give us pause," Cloutier , 351 Or. at 98, 261 P.3d 1234, we reject defendant's assertion that the cross-reference in ORS 31.710(1) to ORS chapter 656 is merely "redundant" of the statutes that preclude workers' compensation benefits from including noneconomic damages. Rather, it appears much more plausible that the cross-reference suggests that the legislature thought that something in ORS chapter 656 would be affected by the noneconomic damages cap if the statute contained no exception for claims "subject to" ORS chapter 656.
Indeed, other provisions in ORS chapter 656 suggest that the legislature could have purposefully excepted some claims on behalf of injured workers that would be affected by the noneconomic damages cap, namely, third-party *1116 claims brought against nonemployer tortfeasors, like the one plaintiff brought in this case. As it existed before the enactment of the noneconomic damages cap, ORS chapter 656 both permitted third-party claims and subjected the **624 proceeds of third-party claims to a system of distribution that included, in part, reimbursement of workers' compensation insurers for the benefits they had paid to injured workers.
Before 1987, when the damages cap was enacted, the workers' compensation law permitted a worker to seek compensation for injuries suffered in the course of employment in a number of ways: (1) a claim for workers' compensation benefits from the insurer of a complying employer, ORS 656.018 (1985) ; (2) a claim for workers' compensation benefits from the State Accident Insurance Fund Corporation (SAIF), which could then seek reimbursement from a noncomplying employer, ORS 656.054 (1985) ; (3) an action against a noncomplying employer for damages, ORS 656.020 (1985) ; and (4) an action against a third party for damages "[i]f the injury to a worker is due to the negligence or wrong" of that third party, ORS 656.154 (1985). Most of the provisions of ORS chapter 656 (1985) concerned the first two options, specifying how claims were to be brought, how the employer's insurer (or SAIF) would process those claims, how disputes concerning claims were to be resolved, and what benefits were available. See generally ORS 656.202 - 656.388 (1985).
But ORS chapter 656 also contained a section of statutes, formerly codified at ORS 656.576 - 656.595 (1985), that addressed the third and fourth types of claims by workers for damages brought against a noncomplying employer or a negligent third party, as well as a fifth type of claim, an assigned claim brought by a workers' compensation insurer. One statute in that section, ORS 656.578 (1985), reflects that ORS 656.154 (1985) was a statute "entitling" a worker to bring claims against a tortfeasor not otherwise immune under the workers' compensation law and provided that the worker had an election to sue the tortfeasor:
"If a worker of a noncomplying employer receives a compensable injury in the course of employment, or if a worker receives a compensable injury due to the negligence or wrong of a third person (other than those exempt from liability under ORS 656.018 ), entitling the worker under ORS 656.154 to seek a remedy against such third person, such **625 worker *** shall elect whether to recover damages from such employer or a third person."
The paying workers' compensation insurer had a right to force an injured worker to make that election within 60 days after the insurer served a written demand on the worker. ORS 656.583 (1985).
If an injured worker elected to proceed with an action against a third party (or a noncomplying employer) for damages, the worker was required to give written notice to the workers' compensation insurer paying benefits and to file proof of service of that notice in the action in the trial court. ORS 656.593(1) (1985). The worker would continue to receive workers' compensation benefits "in the same manner and to the same extent as if no right of action existed against the employer or third party, until damages are recovered from such employer or third party," ORS 656.580(1) (1985), and the insurer had a right to reimbursement under ORS chapter 656. Under ORS 656.580(2) (1985), the workers' compensation insurer that paid benefits "has a lien against the cause of action" that "shall be preferred to all claims except the cost of recovering such damages." And, pursuant to ORS 656.587 (1985), the injured worker could not settle an action against a third party without the written approval of the insurer or, if the insurer disputed the settlement, an order of the Workers' Compensation Board, thereby protecting the insurer's interest in reimbursement.
If the injured worker prevailed in the third-party action, the proceeds recovered had to be distributed in accordance with ORS 656.593(1) (1985). That statute provided for distribution in the following manner: (1) costs and attorney's fees were to be paid, ORS 656.593(1)(a) (1985) ; (2) the injured worker was to receive "at least 33-1/3 percent of the balance" of such recovery, ORS 656.593(1)(b) (1985) ; (3) the insurer "shall be paid and retain the balance of the recovery, but only to the extent that it is compensated for its expenditures for compensation [as specified *1117 ]," including "the present value of its reasonably to be expected future expenditures for compensation and other costs of the worker's claim," ORS 656.593(1)(c) (1985) ; and (4) any balance then was to be paid to the worker, ORS 656.593(1)(d) (1985). **626 In the event of a settlement approved by the insurer, the worker was entitled to receive amounts required by ORS 656.593, and the insurer was "authorized to accept such a share of the proceeds as may be just and proper," with any conflicts about that amount to be settled by the Workers' Compensation Board. ORS 656.593(3) (1985).
If the worker elected not to bring an action against a negligent third party, that election operated as an assignment to the insurer of the worker's claim for damages, ORS 656.591(1) (1985), giving the insurer ownership of the claim. Likewise, if the worker failed to timely make an election, the claim would be deemed assigned to the insurer. ORS 656.583(2) (1985). If the insurer then filed its own action against the third party and prevailed, the insurer recovered its own expenses in pursuing the recovery, expenditures for compensation that it had paid, and the present value of future expenditures for compensation to the injured worker and other costs of the worker's claim, with any balance obtained by the insurer paid to the injured worker. ORS 656.591(2) (1985).
Such third-party actions were statutorily prioritized. If an action was brought against a third party or noncomplying employer, either by the injured worker or the insurer, ORS 656.595(1) (1985) provided that the action "shall have precedence over all other civil cases." And, in any such action, the injured worker's receipt of workers' compensation benefits "shall not be pleaded or admissible in evidence." ORS 656.595(2) (1985).
Two conclusions can be drawn from those workers' compensation provisions that predated the enactment of the noneconomic damages cap set out in ORS 31.710(1). First, none of those provisions precludes an injured worker or insurer from seeking noneconomic damages. Third-party tort claims, unlike claims for workers' compensation benefits, therefore, may involve recovery of both the injured worker's economic and noneconomic damages. Thus, a third-party claim by or on behalf of an injured worker would be subject to a cap on noneconomic damages, but for an exception.
Second, through provisions in ORS chapter 656, the legislature established a priority distribution system **627 different from the common law, allowing a workers' compensation insurer to recoup the amounts that it had paid and would pay in the future as compensation because of the injured worker's claim. In summary, in the case of a third-party claim, ORS chapter 656 provided for who may bring the claim, who is immunized from suit, certain aspects of docket priority and evidence in the trial court, and the order of recovery on the claim. It is a matter of logic that, if the proceeds available for distribution included noneconomic damages in addition to economic damages, then it would be more likely that the amount of money available for distribution in any given case would be sufficient to cover the costs of litigation, to provide amounts to the injured worker for damages, and to reimburse the workers' compensation insurer for past and future benefits that it had to pay because of the workers' compensation claim.
Viewing the disputed phrase in ORS 31.710(1) in that context, we conclude that the text-"claims subject to *** ORS chapter 656"-most plausibly encompasses an exception for the types of claims against noncomplying employers and third parties described in ORS 656.054 (1985), ORS 656.154 (1985), and ORS 656.576 (1985) to ORS 656.595 (1985), rather than one for claims for workers' compensation benefits. As discussed above, if the exclusion for claims subject to ORS chapter 656 were meant to narrowly encompass solely insurance claims for workers' compensation benefits (which, as noted, do not include noneconomic damages), it is difficult to imagine why the legislature would put it in a statute that concerns only noneconomic damages. See, e.g. , Northwest Natural Gas Co. v. City of Gresham , 359 Or. 309, 338, 374 P.3d 829 (2016) (concluding that most plausible interpretation was the one that posed the least textual difficulties). And, a broader understanding of the exception fosters the reimbursement and distribution system in ORS chapter 656 for proceeds of *1118 third-party claims, like the one plaintiff has brought here.
2. Oregon Laws 1987, chapter 774
With the workers' compensation scheme concerning third-party claims in mind, we turn to another aspect of the context of ORS 31.710(1) -its enactment as one provision of **628 Senate Bill (S.B.) 323 in 1987. S.B. 323 was a major piece of legislation described as "tort reform" and containing more than 150 sections, including what is currently codified as ORS 31.710(1). Or. Laws 1987, ch. 774, § 6. Defendant contends that we should not view "claims subject to" ORS chapter 656 broadly because that would contradict the intent behind a noneconomic damages cap enacted as part of that legislation. As explained below, we are not persuaded by defendant's reliance on the scope of S.B. 323.
The legislature's passage of S.B. 323 in 1987 took place in reaction to earlier changes in the law affecting tort liability. In 1971, the legislature had abolished the defense of contributory negligence, which previously had barred recovery if a plaintiff was at fault to any extent, and replaced it with a comparative negligence standard, which allowed some plaintiffs who were themselves negligent to recover partial damages from a negligent tortfeasor. Or. Laws 1971, ch. 668, § 1. In ensuing years, liability insurers and their insureds became concerned that that change in the law and others, such as the expansion of strict liability, were resulting in increased damage awards in tort cases. Kathy T. Graham, 1987 Oregon Tort Reform Legislation: True Reform or Mere Restatement? , 24 Willamette L. Rev. 283, 289 (1988) (noting belief that damages recoveries in tort cases were out of control and that "the insurance industry cannot continue to bear the high costs of the traditional tort system without boosting insurance premiums").
In 1986, the legislature's Joint Interim Task Force on Liability Insurance met to consider proposed changes in tort law, as did a Task Force on Liability appointed by Governor Victor Atiyeh. The role of the groups was to seek ways to control the costs of liability insurance, some of which we mention below. One stated goal was to cap "pain and suffering," or noneconomic, damages. Minutes, Joint Interim Task Force on Liability Insurance, February 25, 1986, 4.
Senate Bill 323 (1987) was enacted with an overarching goal of reducing the costs of insurance by reducing the liability of defendants in tort actions. See, e.g. , Greist , 322 Or. at 299, 906 P.2d 789 (purpose of bill was to reduce costs of **629 insurance premiums and litigation); Graham, 1987 Oregon Tort Reform Legislation, 24 Willamette L. Rev. at 289 (same). To demonstrate its breadth, we briefly summarize some, but not all, of the 156 sections of the 1987 legislation. S.B. 323 restricted to 50 percent the amount of punitive awards that could be paid to a plaintiff and the plaintiff's attorney, with the remainder going into a state fund, and in some circumstances precluded punitive damage awards against various medical personnel and manufacturers of drugs. Or. Laws 1987, ch. 774, §§ 3-5. It placed the $500,000 cap on noneconomic damages and altered the law concerning the liability of codefendants, increasing the circumstances in which a defendant would be severally rather than jointly liable and making liability for noneconomic damages several only. Id. at §§ 6, 7. It enacted a "collateral source" statute that replaced the common-law standard and required a court to deduct from a plaintiff's damage award "benefits [received] for the injury or death other than from the party who is to pay the damages," with certain exceptions. Id. at § 9. It reduced the liability of social hosts for torts of intoxicated guests. Id. at § 13. It voided certain indemnification agreements in construction contracts. Id. at § 25. And it addressed numerous provisions concerning specific types of insurance policies (not including workers' compensation insurance), id. at §§ 31-142, as well as more general regulation of the insurance industry, id. at §§ 143-51.
Although we recognize that S.B. 323 was enacted to "control the escalating costs of the tort compensation system," Greist , 322 Or. at 300 n. 10, 906 P.2d 789, and that the cap on noneconomic damages in ORS 31.710(1) was an aspect of that effort, we do not infer from that general goal that the legislature did not intend to make an exception for claims brought by or on behalf of injured workers *1119 against third parties and noncomplying employers, as governed by the provisions of ORS chapter 656. We instead understand that the legislature was creating exceptions to the damages cap and credit the legislature with designating effective exceptions. Indeed, there is no indication in the text of the 1987 legislation that the damages cap provision in ORS 31.710(1) was intended to apply to those types of claims described in ORS chapter 656. **630 Amicus curiae Oregon Liability Reform Coalition posits that, if "claims subject to *** ORS chapter 656" is interpreted to mean all claims subject to ORS chapter 656, it would lead to the "absurd result" that the noneconomic damages cap would apply to plaintiffs who were injured outside of work, but not to plaintiffs injured at work. We have recognized that when a statute has two or more plausible interpretations, we would not favor the one that "would lead to an absurd result that is inconsistent with the apparent policy of the legislation as a whole." State v. Vasquez-Rubio , 323 Or. 275, 282-83, 917 P.2d 494 (1996). Oregon Liability Reform Coalition's argument, however, is based on a false premise: the assumption that the legislature intended the noneconomic damages cap to apply equally in all circumstances. The text of the statute belies that assumption, because it explicitly sets out exceptions for claims subject to the OTCA and to ORS chapter 656, both of which contain numerous provisions relating to tort claims that may involve noneconomic damages. The question before us is not whether the legislature intended ORS 31.710(1) to apply equally to all plaintiffs bringing tort claims in all circumstances; we know from the text that it did not.
D. Legislative History
Our consideration of the legislative history of ORS 31.710(1), described below, does not further illuminate the legislature's intention. As both parties acknowledge, no legislative history from either the 1986 interim committee that proposed the initial draft of the noneconomic damages cap nor the 1987 legislature that enacted the final version of the legislation explained the exception for claims subject to ORS chapter 656 that is included in the cap.
On July 2, 1986, the Oregon Medical Association (OMA) presented a proposal to the Joint Task Force on Liability Insurance that included language somewhat similar to what eventually was enacted as the cap on noneconomic damages now found in ORS 31.710(1). The OMA's proposal contained the language "except for claims subject to ORS 30.260 to ORS 30.300 and ORS chapter 656" in its introductory clause. Minutes, Joint Interim Task Force on Liability Insurance, July 2, 1986, 8.
**631 The OMA's written summary of that provision described the exception as pertaining to "workers' compensation claims," but did not elaborate on the meaning of that phrase. Exhibit E, Joint Interim Task Force on Liability Insurance, July 2, 1986. A portion of the language proposed by the OMA, including the "claims subject to *** ORS chapter 656" language, became part of the draft legislation that the Joint Interim Task Force on Liability Insurance proposed to the legislature. Ultimately, it was introduced as a part of Senate Bill 323 in 1987 and, as noted above, adopted as section 6.
This court previously has described the purpose of the cap on noneconomic damages:
"[T]he purpose of the limitation on noneconomic damages, found in [section 6], was to reduce the costs of insurance premiums and litigation. See, e.g., Tape recording, House Judiciary Committee, Subcommittee # 1, S.B. 323, April 29, 1987, Tape 466 at 133-200 (statements of Richard Egan, City-County Insurance Trust, and Representative Dave Dix) (discussing purposes and effects of statutory limits on damages awards); Testimony, Senate Judiciary Committee, S.B. 323, February 3, 1987, Ex A at 12 (testimony of John H. Holmes for Citizens' Initiative for Equity in the Legal System) ('A limit on noneconomic damages *** will improve the justice system, make economic sense, result in the availability of more insurance, result in better insurance rates for the consumers, provide predictability in the reinsurance markets of the world, and result in a more reasonable cost to the public of all those goods and services that have been affected by the escalating costs in this area').[10]
*1120 "[10] The legislative history of the noneconomic damages limits in ORS 18.560(1) has been aptly summarized as follows:
" 'In enacting the cap, the Oregon Legislature sought to control the escalating costs of the tort compensation system. The legislature determined that the cap would put a lid on litigation costs, which in turn would help control rising insurance premium costs for Oregonians. The legislature listened to hours of testimony on the insurance and tort crisis, and how reform was needed in order to salvage the system.' "
**632 Greist , 322 Or. at 299-300, 300 n. 10, 906 P.2d 789 (quoting Graham, 1987 Oregon Tort Reform Legislation , 24 Willamette L. Rev. at 292).
Although the purpose of the damages cap itself is apparent from the legislative history, and the legislative history concerning many other aspects of S.B. 323 is voluminous, no legislative history sheds light on what the legislature meant when it included an exception to the cap on noneconomic damages "for claims subject to *** ORS chapter 656[.]" That exception was not discussed at all.
Defendant makes much of the fact that the OMA referred to "workers' compensation claims" in an exhibit provided to the Joint Interim Task Force on Liability Insurance. But the exhibit contained no explanation of the exception, and an exhibit provided to an interim committee by a nonlegislator, and never discussed by that committee or indeed by any member of the legislature that enacted the law, simply does not carry much weight.
As this court noted in Gaines , one of the pitfalls that is "most fraught with the potential for misconstruction" is reliance on the statement of a single legislator or witness to misattribute that person's understanding of a provision to the legislative body as a whole. 346 Or. at 173 n. 9, 206 P.3d 1042 (citing Errand v. Cascade Steel Rolling Mills, Inc ., 320 Or. 509, 539 n. 4, 888 P.2d 544 (1995) (Graber, J., dissenting)). This court reiterated that caution in Patton v. Target Corp. , 349 Or. 230, 242, 242 P.3d 611 (2010), expressing that the comment of a single legislator at one committee hearing "generally is of dubious utility in determining the intent of the legislature" as a whole and that "the comment of a nonlegislator witness even less helpful." Here, the statement at issue was not even made in committee by a witness but was instead included in an exhibit provided to the committee and then never discussed at all. Ultimately, we do not read much into that reference because the workers' compensation law itself defines and uses the term "claims" broadly, as noted above, and because such a brief and cursory description that was never discussed or even mentioned by the legislators provides no significant insight into what the legislature intended the scope of this exception to be.
**633 We also are skeptical of defendant's reliance on legislative silence. Defendant argues that, if the legislature had understood that the exception for claims subject to ORS chapter 656 covered third-party claims by injured workers, then that topic would have been significant enough to be discussed and recorded in legislative history. As this court stated recently in Wyers v. American Medical Response Northwest, Inc. , 360 Or. 211, 227, 377 P.3d 570 (2016), to infer "legislative intent on the basis of a lack of comment in the legislative history is problematic for several reasons." We explained that arguments based on legislative silence are based on unrealistic assumptions, including that "legislators are in a position to predict all the potential consequences of legislation and that they will always address them"; that legislators are not subject to the time pressures at play in legislative sessions, which may preclude opportunities for "comment on all of a bill's potential consequences"; and that "the nature of legislative history *** often is designed not to explain to future courts the intended meaning of a statute, but rather to persuade legislative colleagues to vote in a particular way." Id. Although defendant speculates that the exception is one that would have been discussed, we are not so sure. It is also possible that the exception was crafted and understood as preserving the workers' compensation system as it then existed. We do not know, and we do not draw any conclusion one way or the other from the lack of legislative history concerning the scope of the exception.
*1121 III. CONCLUSION
The text of ORS 31.710(1), viewed in context, excludes from the noneconomic damages cap third-party claims by or on behalf of workers injured in the course of their employment, such as the claim brought by plaintiff here. Primarily, that is so because the text is worded broadly to encompass all of ORS chapter 656; the term "claims" is used in the exception in a way that applies to tort claims, given its inclusion of claims subject to the OTCA; and the exception is to a statute that pertains only to noneconomic damages and would make little sense if it were interpreted to apply only to the portions of ORS chapter 656 that do not **634 permit noneconomic damages in any event. In the words of ORS 31.710(1), plaintiff's claim is "subject to" numerous provisions found in ORS chapter 656. For that reason, the trial court correctly entered judgment in plaintiff's favor pursuant to the jury verdict.
The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

Numerous amici curiae have weighed in in both sides of the statutory and constitutional issues presented as well. We address some of their arguments in the discussion below.

References throughout this opinion to "insurer" as used in ORS chapter 656 also include self-insured employers.

Although defendant is correct that most references to a "claim" in ORS chapter 656 (1985) are to claims for workers' compensation benefits, that is not always the case. See, e.g. , ORS 656.583(2) (1985) (referring to a "claim against the third person by the injured worker"); ORS 656.018 (1985) (referring to an employer's exclusive liability for compensable injuries to workers "on account of such injuries or claims resulting therefore, specifically including claims for contribution or indemnity asserted by third persons from whom damages are sought on account of such injuries"). We also note that later-enacted statutes in ORS chapter 656 similarly use "claim" at times to refer to claims other than those for benefits, see, e.g. , ORS 656.019 (enacted in 2001 and referring to a "civil negligence claim" against an employer for a work-related injury), confirming that, over time, the legislature has used "claim" to refer both to claims for benefits and to civil claims. See Halperin v. Pitts , 352 Or. 482, 490-91, 287 P.3d 1069 (2012) (noting that later-enacted statutes may provide indirect evidence of what the enacting legislature most likely intended, in the form of legislature's consistency or inconsistency in word usage over time).

We note that the workers' compensation laws have undergone significant revisions since that time. For example, the "1990 special session of the legislature was convened primarily to overhaul Oregon's workers' compensation laws." Brown v. SAIF , 361 Or. 241, 265, 391 P.3d 773 (2017). However, most of those statutes to which we refer as context for the 1987 enactment of ORS 31.710(1) remain substantially the same.