Submitted on briefs December 23, 2020, certified question answered
May 6, 2021

Max ZWEIZIG,
*Plaintiff-Appellant,*

*v.*

Timothy C. ROTE,
*Defendant-Appellee,*
*and*

NORTHWEST DIRECT TELESERVICES, INC.;
Northwest Direct Marketing of Oregon, Inc.;
Northwest Direct Marketing, Inc.;
Northwest Direct of Iowa, Inc.;
Rote Enterprises, LLC; and
Does 1 through 5,
*Defendants.*

(United States Court of Appeals for the
Ninth Circuit No. 18-36060) (SC S067820)

486 P3d 763

Plaintiff filed suit in the United States District Court for the District of Oregon against defendant, alleging that defendant aided and abetted in retaliating against plaintiff in violation of ORS 659A.030. Plaintiff did not suffer any physical injury. The jury found for plaintiff and awarded him $1,000,000 in noneconomic damages. On defendant's motion, the district court applied the $500,000 cap on noneconomic damages set forth in ORS 31.710(1). Defendant appealed, and plaintiff cross-appealed, challenging the reduction of the jury award. The United States Court of Appeals for the Ninth Circuit certified the question whether ORS 31.710(1) caps the noneconomic damages awarded on an unlawful employment practice claim under ORS 659A.030. *Held*: The cap in ORS 31.710(1) applies to noneconomic damages awarded on claims seeking damages that arise out of (1) bodily injury, such as damages for emotional injury or distress suffered in connection with bodily injury; (2) death; or (3) property damage. The cap does not apply to noneconomic damages awarded on an unlawful employment practice claim brought under ORS 659A.030 that seeks damages for purely emotional injury.

The certified question is answered.

En Banc

On certified question from the United States Court of Appeals for the Ninth Circuit; certified order dated June 16, 2020, certification accepted July 30, 2020.

Shenoa Payne, Shenoa Payne Attorney at Law PC, Portland, filed the briefs for plaintiff-appellant. Also on the briefs was Joel Christiansen.

Timothy C. Rote, West Linn, filed the brief *pro se*.

James S. Coon, Thomas, Coon, Newton & Frost, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

NAKAMOTO, J.

The certified question is answered.

### NAKAMOTO, J.

We address a certified question from the United States Court of Appeals for the Ninth Circuit concerning whether a statutory damages cap applies to an award of noneconomic damages in an unlawful employment practice action. Plaintiff Max Zweizig brought this action in the federal district court in Oregon, alleging that corporate defendants had retaliated against him and that defendant Timothy C. Rote had aided and abetted the corporations in violation of Oregon statutes. The jury found for plaintiff and awarded him $1,000,000 in noneconomic damages. Over plaintiff's objection, the district court entered a judgment for only half that amount after applying the noneconomic damages cap set out in ORS 31.710(1) ("[I]n any civil action seeking damages arising out of bodily injury, including emotional injury or distress, death or property damage of any one person including claims for loss of care, comfort, companionship and society and loss of consortium, the amount awarded for noneconomic damages shall not exceed $500,000."). Defendant appealed, and plaintiff cross-appealed, challenging the reduction of the noneconomic damage award.

The Ninth Circuit certified the following question of state law to this court: "Does Oregon Revised Statutes § 31.710(1) cap the noneconomic damages awarded on an employment discrimination claim under Oregon Revised Statutes § 659A.030?" We accepted the question under ORS 28.200. *Zweizig v. Rote*, 366 Or 762, 468 P3d 948 (2020). The answer, in short, is no. The damages cap in ORS 31.710(1) does not apply to an award of noneconomic damages for an unlawful employment practice claim under ORS 659A.030 in which the plaintiff does not seek damages that arise out of bodily injury and instead seeks damages for emotional injury.

## I.   FACTS AND PROCEDURAL POSTURE

We take the facts, which are mainly procedural, from the Ninth Circuit's certification order. Plaintiff, a former employee of Northwest Direct Teleservices, Inc., brought an unlawful employment practice action against defendant in

the United States District Court for the District of Oregon.[1] Plaintiff alleged that, in violation of ORS 659A.030(1)(g),[2] defendant aided and abetted retaliation against plaintiff for whistleblowing on his former employer, a practice prohibited by ORS 659A.030(1)(f).[3] It is undisputed that plaintiff did not suffer any physical injury. A jury returned a verdict in favor of plaintiff, and it awarded him $1,000,000 in noneconomic damages.

Defendant sought a reduction in the amount of the award to be included in the judgment, arguing that the award was subject to the noneconomic damages cap in ORS 31.710(1). That statute provides that noneconomic damages may not exceed $500,000 "in any civil action seeking damages arising out of bodily injury, including emotional injury or distress, death or property damage * * *." ORS 31.710(1).

The district court applied the $500,000 damages cap to the jury's award. *Zweizig v. Northwest Direct Teleservices, Inc.*, 331 F Supp 3d 1173 (D Or 2018). Examining the text of ORS 31.710(1) and focusing on the phrase "in any civil action seeking damages arising out of bodily injury," the court was persuaded that the legislature had intended emotional injury and distress to serve as examples of bodily injury. *Id.* at 1184. That reading, the court concluded, was consistent with the holding of the Oregon Court of Appeals that some claims for emotional distress can be considered as an injury to one's person. *Id.* (citing *Rains v. Stayton Builders Mart, Inc.*, 289 Or App 672, 687-88, 410 P3d 336 (2018) (holding that a wife's loss of consortium claim stemming from her husband's physical injuries was considered an injury to the wife's person that was protected under the remedy clause of the Oregon Constitution)).

---

[1] Plaintiff also sued his former employer and its successors. The corporate defendants, however, defaulted before trial and are not parties to this appeal.

[2] ORS 659A.030(1)(g) provides that it is an unlawful employment practice "[f]or any person, whether an employer or an employee, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so."

[3] ORS 659A.030(1)(f) provides that it is unlawful employment practice "[f]or any person to discharge, expel or otherwise discriminate against any other person because that other person has opposed any unlawful practice, or because that other person has filed a complaint, testified or assisted in any proceeding under this chapter or has attempted to do so."

The district court also examined legislative history. The court observed that ORS 31.710(1) codified one of many sections of a bill aimed to stabilize insurance premiums and decrease tort litigation costs. *Zweizig*, 331 F Supp 3d at 1184. The district court reasoned that a broad reading of the statute—to allow the cap to apply to damages arising out of purely emotional injuries—most closely conformed with the legislature's goal of reducing the costs of tort litigation. *Id.* On the flip side, the court rejected the narrower reading of the statute that plaintiff proposed, which would exclude some tort claims from the damages cap, as inconsistent with that legislative goal. *Id.* at 1184-85. In view of the "broad language of the statute and the legislative history" of ORS 31.710(1), the district court concluded that ORS 31.710(1) applies to unlawful employment practice claims involving purely emotional injuries. *Id.* at 1185.

Defendant appealed the judgment, and plaintiff cross-appealed, assigning error to the district court's imposition of the noneconomic damages cap in an unlawful employment practice case. The Ninth Circuit rejected defendant's arguments in a memorandum disposition. *Zweizig v. Rote*, 818 Fed Appx 645 (9th Cir), *cert den*, ___ US ___, 141 S Ct 848, 208 L Ed 2d 424 (2020). In a contemporaneously filed order, the Ninth Circuit certified the question that this court accepted: "Does Oregon Revised Statutes § 31.710(1) cap the noneconomic damages awarded on an employment discrimination claim under Oregon Revised Statutes § 659A.030?"

## II.   ANALYSIS

Whether the cap on noneconomic damages in ORS 31.710(1) applies to damages awarded solely for emotional injury caused by employment practices made unlawful by ORS 659A.030 is a question of first impression for this court and calls for the interpretation of ORS 31.710(1). As with other cases involving statutory interpretation, our methodology is to start by reviewing the text of the statute, in context, and considering any relevant legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). The "paramount goal" of that process is "discerning the legislature's intent." *Id.* at 171.

A.   *Alternative Views of the Text*

In full, ORS 31.710(1) provides:

"Except for claims subject to ORS 30.260 and ORS chapter 656, *in any civil action seeking damages arising out of bodily injury, including emotional injury or distress, death or property damage* of any one person including claims for loss of care, comfort, companionship and society and loss of consortium, the amount awarded for noneconomic damages shall not exceed $500,000."

(Emphasis added.) The parties dispute how to parse the emphasized text, with each offering different views about both the extent of the participial phrase and the object that it modifies.

Plaintiff contends that the participial phrase is "including emotional injury or distress, death or property damage," which modifies "damages arising out of bodily injury." Thus, according to plaintiff, if, and only if, the damages arise out of bodily injury, then noneconomic damages for (1) emotional injury or distress, (2) death, or (3) property damage are subject to the $500,000 cap. But defendant contends that the object being modified is "bodily injury" and that the participial phrase is "including emotional injury or distress." In defendant's view, no showing of bodily injury is needed; rather, the cap applies to damages arising out of three types of harms: (1) bodily injury, which equates with emotional injury or distress; (2) death; or (3) property damage.

Because this court bears responsibility for correctly construing a statute, regardless of the parties' proffered interpretations, *Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997), we have considered a third reading of the text that neither party has addressed: that the phrase "including emotional injury or distress" modifies "damages arising out of bodily injury." With that view of the text, the noneconomic damages cap in ORS 31.710(1) would apply to claims seeking damages that arise out of (1) bodily injury, such as damages for emotional injury or distress suffered in connection with bodily injury; (2) death; or (3) property damage.

All three readings of the text of ORS 31.710(1) are plausible. But, based on the text, context, and legislative history of the statute, we conclude that the legislature most likely intended the third reading of the text rather than the interpretations that the parties have proffered.

B.   *Textual Analysis*

As this court has often repeated, "the text of the statutory provision itself is the starting point for interpretation and is the best evidence of the legislature's intent." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). The first part of the disputed text states that the cap applies "in *any* civil action." ORS 31.710(1) (emphasis added). Although the legislature exempted a narrow class of claims from the cap—"claims subject to ORS 30.260 to 30.300 [the Oregon Tort Claims Act] and ORS chapter 656 [the Workers' Compensation Law]"—the legislature did not otherwise place subject-matter limitations on civil claims to which the cap might apply. Thus, unlawful employment practices claims are not exempt from the cap as a class.

Instead, whether the damages cap in ORS 31.710(1) applies to the claim in this case depends on the damages that plaintiff requested, because the cap applies in "any civil action seeking" the damages specified in the statute. Accordingly, our focal point is the description of the types of damages that can be subject to the cap in ORS 31.710(1), especially the disputed phrase "damages arising out of bodily injury, including emotional injury or distress, death or property damage."

The syntax of the sentence does permit plaintiff's view that the disputed phrase contains a series of three examples of damages arising out of bodily injury. But that reading—which ascribes to the legislature an understanding that both death and property damage arise out of a bodily injury—appears off the mark. The word "arise," as used as an intransitive verb, means "to originate from a specified source." *Webster's Third New Int'l Dictionary* 117 (unabridged ed 2002). Property damage arising from bodily injury would mean that bodily injury is the source of property damage, an unlikely circumstance at best.

Reading the participial phrase as "including emotional injury or distress" also is permissible, and more plausible than plaintiff's reading, considering punctuation and grammar. From the standpoint of punctuation, we note that the participial phrase is set off by commas, which suggests that it is a parenthetical expression. And as a matter of grammar, the commas indicate that the phrase is a nonrestrictive clause. *See The Chicago Manual of Style* § 6.27, 376 (17th ed 2017) (explaining that nonrestrictive clauses "could be omitted without obscuring the identity of the noun to which it refers" and "are set off from the rest of the sentence by commas"; restrictive clauses "are never set off by commas from the rest of the sentence"); Bryan A. Garner, *A Dictionary of Modern Legal Usage* 481 (1987) (stating that, as opposed to nonrestrictive clauses, which "might be omitted without changing the essential meaning," restrictive clauses "are essential to the grammatical and logical completeness of a sentence"). In other words, it functions as an adjective and adds information but could be omitted from the sentence. By viewing "including emotional injury or distress" as a nonrestrictive clause, it follows that, at a minimum, for the noneconomic damages cap to apply, damages must arise out of—or originate from—a series of three specified sources: (1) bodily injury, (2) death, or (3) property damage.

The next interpretative dispute is over what the participial phrase modifies. If the phrase "including emotional injury or distress" modifies only "bodily injury," as defendant contends, then it would appear that the legislature has defined a bodily injury to include emotional injury for purposes of the damages cap. But if the phrase modifies "damages arising out of bodily injury," as plaintiff contends, then emotional injury is subject to the cap when it arises out of a bodily injury. Although both readings are plausible, turning again to grammar and punctuation, we view the latter reading as the one that the legislature more likely intended.

In the phrase "damages arising out of bodily injury," the noun "damages" is modified by another participial phrase serving as an adjective, "arising out of bodily injury." This time, however, the participial phrase is not set off by commas, and so it is, grammatically speaking, restrictive.

That, in turn, indicates that we should read "damages arising out of bodily injury" as a unit and as the antecedent that is modified by "including emotional injury or distress." Under that reading, if damages originate from bodily injury, then damages for emotional injury or distress are also subject to the cap.

The contrary view adopted by the district court and defendant—that "bodily injury" is the noun modified by the phrase "including emotional injury or distress"—is plausible. But that reading would mean that the legislature defined "bodily injury" as including or exemplified by "emotional injury or distress." Considering the commonly used meaning of "bodily injury," however, it is unlikely that the legislature intended bodily injury to be equated with emotional injury.

The term "bodily injury" is not defined in ORS 31.710. Absent a statutory definition, "we ordinarily look to the plain meaning of the statute's text to determine what particular terms mean." *State v. Dickerson*, 356 Or 822, 829, 345 P3d 447 (2015). To determine a term's plain meaning, we typically consult dictionaries to determine what the legislature would have understood a term to mean. Additionally, "bodily injury" is a legal term of art used in tort litigation. "When 'a term is a legal one, we look to its "established legal meaning" as revealed by, for starters at least, legal dictionaries.'" *DCBS v. Muliro*, 359 Or 736, 746, 380 P3d 270 (2016) (quoting *Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 296, 337 P3d 768 (2014)). Under either usage, "bodily injury" connotes physical impairment.

We first examine the common meaning of the term "bodily injury." "Injury" is defined as "an act that damages, harms, or hurts * * *." *Webster's* at 1164. The adjective "bodily" means "having a body or a material form: PHYSICAL * * *." *Id.* at 245. *Webster's* lists "physical" as a synonym of bodily, explaining that "[bodily] contrasts with *mental* or *spiritual* * * *." *Id.* (emphasis in original). Commonly understood, a bodily injury is a physical injury.

And if "bodily injury" is used as a legal term of art, *Black's Law Dictionary* defines "bodily injury" as "[p]hysical damage to a person's body." Bryan A. Garner, *Black's Law*

*Dictionary* 939 (11th ed 2019). Additionally, the *Restatement (Second) of Torts* has described the similar term "bodily harm" as "any physical impairment of the condition of another's body, or physical pain or illness." *Restatement (Second) of Torts* § 15 (1965). Thus, both in common usage and legal usage, the meaning of "bodily injury" refers to a physical injury to one's body.

Emotional injury differs from physical injury. "Emotional" means "of or relating to emotion, esp. to more than usual emotion ***." *Webster's* at 742. Although the term "emotional injury" is not defined in *Black's Law Dictionary*, the term "emotional distress" is defined as "[a] highly unpleasant mental reaction (such as anguish, grief, fright, humiliation, or fury) that results from another person's conduct; emotional pain and suffering." *Black's Law Dictionary* at 596. And the *Restatement (Third) of Torts* spells out that "'[e]motional harm' is distinct from bodily harm ***." *Restatement (Third) of Torts* § 4 comment a (2010).[4]

That distinction can be seen in this court's case law. Recently, for example, the court recognized and expounded on the distinction between physical injury and emotional injury in *Philibert v. Kluser*, 360 Or 698, 385 P3d 1038 (2016). *Philibert* was a case involving whether siblings who were not physically injured but who suffered emotional injuries from witnessing the death of their brother, who was run over by a truck as they were crossing the street, could recover emotional distress damages from the negligent truck driver. *Id.* at 700. We observed that, "[i]n contrast to physical harms, emotional harms occur frequently," *id.* at 703, and explained that, as a result, "foreseeability, standing alone, is not a useful limit on the scope of liability for emotional injuries" caused by negligent conduct, as it is in the case of physical harms, *id.* at 704. At the same time, we recognized the "general rule that emotional distress damages are available to a plaintiff who is physically injured," *id.* at 703 n 2, in contrast to the limited circumstances in which a person's emotional well-being is legally protected, *id.* at 704 n 3.

---

[4] Although the Restatements use the term "bodily harm," we do not see a meaningful distinction in their use of "bodily harm" as opposed to the term "bodily injury" used in ORS 31.710(1).

Because bodily injury and emotional injury are understood to be different, in both common and legal usage, defendant's construction of the statute is less plausible than one in which the legislature intended "bodily injury" to refer to physical injuries rather than to both physical and emotional injuries. Reading "including emotional injury and distress" as modifying "damages arising out of bodily injury" is consonant with the meaning of bodily injury and the distinction between bodily injury and emotional injury.[5]

## C.  *Context*

The context of ORS 31.710(1) aids in discerning whether the legislature intended to apply the noneconomic damages cap to claims seeking damages arising out of bodily injury, death, or property damage, as the text appears to indicate, or whether any award for emotional injuries, regardless of a connection to damages arising out of bodily injury, death, or property damage, is subject to the cap. Context includes all "other provisions of the same statute and other related statutes," *PGE*, 317 Or at 611, as well as session laws, *see Owens v. Maass*, 323 Or 430, 434 n 5, 918 P2d 808 (1996). In this case, the pertinent context includes another subsection of ORS 31.710 and other sections of the 1987 law that created ORS 31.710(1) that refer to claims for bodily injury, death, or property damage. That context further suggests that the legislature specified three categories of harm subject to the cap—bodily injury, death, and property damage—and that the legislature intended that damages for emotional injury arising from bodily injury would be subject to the cap but not emotional injury arising from unlawful employment practices.

In ORS 31.710(2), the legislature provided definitions for purposes of the statute. Although bodily injury is

---

[5] In at least two cases, this court has previously stated that ORS 31.710(1) applies in civil actions arising out of bodily injury. *See Building Structures, Inc. v. Young*, 328 Or 100, 103 n 1, 968 P2d 1287 (1998) (explaining in *dicta* that the plaintiffs' claims, which involved breach of contract, fraud, and *quantum meruit*, were not subject to the noneconomic damages cap because the cap would "apply in a civil action seeking damages arising out of bodily injury"); *Vasquez v. Double Press Mfg., Inc.*, 364 Or 609, 614, 437 P3d 1107 (2019) ("Under ORS 31.710(1), noneconomic damages in civil actions involving bodily injury are capped at $500,000 * * *.").

not defined, the legislature defined both economic damages and, as relevant here, noneconomic damages. As defined, "noneconomic damages" means

> "subjective, nonmonetary losses, including but not limited to pain, mental suffering, *emotional distress*, humiliation, injury to reputation, loss of care, comfort, companionship and society, loss of consortium, inconvenience and interference with normal and usual activities apart from gainful employment."

ORS 31.710(2)(b) (emphasis added).

In view of the statutory definitions that the legislature crafted in ORS 31.710(2), we are further dissuaded from accepting defendant's argument that the legislature intended to define "bodily injury" in ORS 31.710(1) and to equate bodily injury with emotional injury. Had the legislature wanted to define "bodily injury" in a way that deviated from its usual meaning, the legislature likely would have included a definition of the term along with other definitions in ORS 31.710(2). And the definition of noneconomic damages in ORS 31.710 (2)(b) suggests that the legislature recognized that bodily injury is not the same as emotional injury and distress by including emotional distress in a list of harms that may be associated with, but are different from, a physical injury. We also note that, in describing the claims to which the cap would apply, the legislature included in subsection (1) examples of some, but not all, aspects of the definition of noneconomic damages stated in subsection (2): "in any civil action seeking damages arising out of bodily injury, *including emotional injury or distress*, death or property damage of any one person *including claims for loss of care, comfort, companionship and society and loss of consortium*, the amount awarded for noneconomic damages shall not exceed $500,000." ORS 31.710(1) (emphases added). That repetition of examples in ORS 31.710(1), which is unnecessary for the cap to apply given the definition of noneconomic damages, suggests that the legislature chose to emphasize common examples of noneconomic damages associated with claims for bodily injury, death, or property damage that would be subject to the cap.

Other parts of the session law further suggest that the legislature intended to impose the cap on noneconomic

damages arising out of bodily injury, death, or property damage rather than on noneconomic damage awards independent of those three categories of harms. In 1987, ORS 31.710(1) was enacted as a result of Senate Bill (SB) 323 (1987), a "tort reform" bill containing over 150 sections. Or Laws 1987, ch 774, § 6. The general goal of SB 323 was to reduce insurance costs by reducing the liability of defendants in tort actions. *Vasquez*, 364 Or at 628.

Like section 6, which imposed the cap on noneconomic damages, other sections of SB 323 also listed bodily injury, death, and property damage as a group of three categories of harms. In section 7, now codified at ORS 31.610(1), the legislature addressed the liability of multiple defendants, providing that, generally,

> "[*i*]*n any civil action arising out of bodily injury, death or property damage*, including claims for emotional injury or distress, loss of care, comfort, companionship and society, and loss of consortium, the liability of each defendant for noneconomic damages awarded to plaintiff shall be several only and shall not be joint."

Or Laws 1987, ch 774, § 7 (emphasis added). Similarly, in the next section of SB 323, the legislature addressed contingent fee agreements in "any civil action arising out of bodily injury, death or property damage." *Id*. § 8 (originally codified at ORS 9.400, renumbered as ORS 20.340 (1997)). *See also* Or Laws 1987, ch 774, § 25 (codified at ORS 30.140) (referring to "liability for damage arising out of death or bodily injury to persons or damage to property ***"). The repetition of the group of three categories of harms in multiple sections of SB 323 suggests that the legislature took a common view of them and undercuts plaintiff's thesis that "bodily injury" alone triggers the applicability of the noneconomic damages cap. We conclude that the legislature likely referred to the group of harms again in section 6, with the likely result that ORS 31.710(1) caps noneconomic damages if the claimed damages arise out of at least one of those three categories of harms: bodily injury, death, or property damages.

D.   *Legislative History*

We recognize that section 6 was the only provision within SB 323 to insert the participial phrase "including

emotional injury or distress" within the group of those three categories of harms. Legislators were aware, however, that the text of section 6 and what would become ORS 31.710(1) would be worded differently than other sections of SB 323 with similar provisions, but they explained during a committee hearing that the variations were not important.

The Senate Judiciary Committee met on March 19, 1987, to discuss SB 323. The Committee Administrator, counsel Eric Carlson, mentioned that similar, yet inconsistent language existed throughout the bill. For example, what is now codified as ORS 31.610(1) had been drafted to apply "[i]n any civil action arising out of bodily injury, death or property damage, including claims for emotional injury or distress, loss of care, comfort, companionship and society * * *." *See* Or Laws 1987, ch 774, § 7. Carlson recommended adopting the language that now exists in ORS 31.710(1) in every section of the bill that contained similar phrases to "forestall any kind of argument in a future lawsuit that [the legislature] meant something different if the words are different * * *." Tape Recording, Senate Committee on Judiciary, SB 323, Mar 19, 1987, Tape 71, Side A (statement of Committee Administrator Eric Carlson).

The committee chairman, Senator William Frye, responded, conveying that he believed that the text of ORS 31.710(1) clarified that the specified claims could derive from civil actions in which the plaintiff claimed damages arising out of bodily injury, death, or property damage: "I think that the way it's worded, you know any 'damages arising out of bodily injuries' and so forth, covers all this other stuff that happens to be spelled out in more detail." *Id.* (statement of Chairman William Frye). Moreover, Senator Joyce Cohen recognized that the list of damages subject to ORS 31.710(1) was necessary because the legislature was "trying to define between an economic damage and a non-economic damage." *Id.* (statement of Sen Joyce Cohen). Both Chairman Frye and Senator Cohen agreed that "the record will show" that they did not intend different meanings when language similar to what was contained in section 6 was used in the bill. *Id.* (statements of Chairman William Frye and Sen Joyce Cohen). That exchange, coupled with the different ways

in which the legislature expressed that sections of SB 323 applied to civil actions arising out of bodily injury, death, or property damage, strongly suggests that, regardless of minor variations, the legislature intended that the noneconomic damages cap would apply to claims involving bodily injury, death, and property damage. That exchange also contradicts defendant's contention that the legislature was defining "bodily injury" in ORS 31.710(1) so that "emotional injury or distress" was the equivalent or an example of bodily injury.

Although the legislative history of SB 323 does not expressly address whether the legislature intended unlawful employment practice claims involving purely emotional injury to be subject to the noneconomic damages cap, the focus of the bill is consistent with our reading of the statute that the legislature did not intend to cap such damages. Following changes in tort liability during the 1970s, liability insurers and their insureds became worried that those changes would result in increased—and unpredictable—jury awards in tort cases, which in turn would increase insurance premiums. *Vasquez*, 364 Or at 628. Governor Victor Atiyeh responded by appointing a Task Force on Liability, which met with the legislature's Joint Interim Task Force on Liability Insurance, to consider further tort reform measures to lower those insurance premiums. *Id.* One of the stated goals of the Joint Interim Task Force on Liability Insurance was to cap noneconomic, or "pain and suffering," damage awards. *Id.* (citing Minutes, Joint Interim Task Force on Liability Insurance, Feb 25, 1986, 4). This court has recognized that the general goal of the cap on noneconomic damages in SB 323 was to reduce the costs of insurance premiums and the costs of litigation that the legislature was addressing. *Greist v. Phillips*, 322 Or 281, 298-99, 906 P2d 789 (1995), *overruled on other grounds by Busch v. McInnis Waste Systems, Inc.*, 366 Or 628, 468 P3d 419 (2020).

The legislative history does not reflect that the legislature discussed applying the noneconomic damages cap to every award of noneconomic damages, regardless of the type of claim involved; rather, the cap was discussed exclusively in the context of claims involving physical injury or death. The Governor's Task Force on Liability's Final

Report, which was submitted to the legislature, identified the problem of high jury awards for pain and suffering, noting that, "[t]hese awards are classified as non-economic and are intended to compensate the victim for mental, physical, or emotional distress *related to an injury*." Governor's Task Force on Liability, Final Report on Recommendations to Ease the Liability Insurance Strain in Oregon, 4 (July 1, 1986) (emphasis added). In its detailed report, the Task Force on Liability recited statistics about the increasing number of product liability, medical malpractice, and personal injury lawsuits. *Id.* at 20-21. Moreover, the Task Force on Liability focused its discussion on awards concerning physical injury, such as the "worth" of losing two legs in a personal injury car accident versus in a workplace accident. *Id.* at 21.

Additionally, the legislature received testimony and exhibits demonstrating the focus of SB 323: to reduce defendant liability in tort actions involving a physical injury or death and to create predictability in jury awards for such tort actions. For example, a witness testified before the House Judiciary Committee about the average payouts in bodily injury cases involving product liability and described cases that involved death or physical injuries, including permanent grave injuries (such as quadriplegia and severe brain damage requiring lifelong care) and permanent major injuries (such as paraplegia, blindness, loss of limbs, and brain damage). *See* Minutes at 14, House Committee on Judiciary, SB 323, Apr 3, 1987 (statement of products liability study member Charles Crawford). Another witness, a law professor with expertise in the field of tort law, provided information to the Senate Judiciary Committee about the noneconomic damage cap, describing the forms of damages available to plaintiffs in the context of "personal injury actions." Exhibit C at 6, Senate Committee on Judiciary, SB 323, Jan 27, 1987 (accompanying statement of University of Oregon School of Law Professor Dominick Vetri). He noted that "[p]ain and suffering and mental distress comprise a general category that allows the jury to award monetary damages for physical pain and suffering now and in the future as well as for emotional injuries *resulting from the accident*." *Id.* (emphasis added).

As the hearings on SB 323 reflect, the legislature's focus when discussing the damages cap was on tort actions involving physical injury of some kind or death. And when the legislature discussed emotional injuries, it was in the context of those types of civil actions. That legislative focus, considered with the statutory text and context, leads us to reject defendant's argument, and the district court's conclusion, that the legislature's interest in reducing the cost of tort litigation should be translated as an intention to cap noneconomic damage awards for all manner of claims.

The text and context of ORS 31.710(1), in conjunction with the legislative history of SB 323, persuades us that the legislature did not intend to cap noneconomic damages in unlawful employment practice claims, like the one that plaintiff asserted, which do not involve a plaintiff seeking damages arising out of bodily injury, death, or property damage. Accordingly, we answer the certified question as follows: ORS 31.710(1) does not cap the noneconomic damages awarded on an unlawful employment practice claim brought under ORS 659A.030.

The certified question is answered.