Argued and submitted September 7, 2021; determination that youth may be held in detention under ORS 419C.145 after adjudication reversed, otherwise affirmed March 2, 2022

In the Matter of J. R.,
aka J. E. R., a Youth.

STATE OF OREGON,
*Respondent,*

*v.*

J. R.,
aka J. E. R.,
*Appellant.*

Multnomah County Circuit Court
15JU05896;
Petition Number 151001005;
A172243 (Control), A172324

507 P3d 778

Youth appeals the juvenile court's order continuing his preadjudication detention pending disposition. He argues that ORS 419C.145 authorizes detention of a youth only before adjudication of the allegations in a petition, not after. Youth acknowledges that that issue is now moot but argues that it qualifies for review under ORS 14.175 as it is capable of repetition and likely to evade review. *Held*: Youth's first assignment was moot but satisfied the requirements of ORS 14.175, and, exercising its discretion to reach that moot issue, the Court of Appeals concluded that ORS 419C.145 authorizes detention of a youth only before the trial-like adjudication stage of a juvenile proceeding; it does not provide for detention of a youth between the adjudication stage and disposition stage of a juvenile delinquency proceeding.

Determination that youth may be held in detention under ORS 419C.145 after adjudication reversed; otherwise affirmed.

Amy Holmes Hehn, Judge.

Christa Obold Eshleman argued the cause for appellant. Also on the briefs was Youth, Rights & Justice.

Jonathan N. Schildt, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, and Aoyagi, Judge, and Armstrong, Presiding Judge.

TOOKEY, P. J.

Determination that youth may be held in detention under ORS 419C.145 after adjudication reversed; otherwise affirmed.

**TOOKEY, P. J.**

This consolidated appeal of two orders in a juvenile delinquency proceeding requires us to construe ORS 419C.145, which authorizes detention of a youth "before adjudication on the merits."[1] Youth was on probation and committed to the custody of the Oregon Youth Authority (OYA) for a prior delinquency adjudication. As permitted by ORS 419C.145, the juvenile court placed youth in detention based on probable cause that he had violated the conditions of his probation. The juvenile court then determined that youth had violated the conditions of his probation and continued youth's detention pending disposition. The juvenile court subsequently terminated youth's commitment to OYA, but ordered an additional eight days of detention as a sanction for youth's probation violation.

Youth first assigns error to the juvenile court's order continuing his detention pending disposition. He argues that ORS 419C.145 authorizes detention of a youth only *before* adjudication of the allegations. Youth acknowledges that that issue is now moot but argues that it qualifies for review under ORS 14.175 as it is capable of repetition and likely to evade review. As explained below, we conclude that youth's first assignment is moot but satisfies the requirements of ORS 14.175, and, on the merits, we conclude that ORS 419C.145 authorizes detention of a youth only before the trial-like adjudication stage of a juvenile proceeding, not after; it does not provide for detention of a youth between adjudication and disposition.

Youth also assigns error to the juvenile court's determination that the eight days of detention imposed as a probation-violation sanction did not count toward the statutory maximum periods of "institutionalization

---

[1] ORS 419C.145 provides, in relevant part:

"(1)  A youth may be held or placed in detention before adjudication on the merits if one or more of the following circumstances exists:

"* * * * *

"(d)  The youth is currently on probation imposed as a consequence of the youth previously having been found to be within the jurisdiction of the court under ORS 419C.005 (Jurisdiction), and there is probable cause to believe the youth has violated one or more of the conditions of that probation[.]"

or commitment" provided in ORS 419C.501. As explained below, we conclude that that issue is moot and does not satisfy the requirements for review under ORS 14.175.

## I.   BACKGROUND

The facts relevant to the issues on appeal are largely procedural and not disputed. In January 2016, youth was adjudicated delinquent for conduct that, if committed by an adult, would constitute three Class A misdemeanors. As a result, youth was placed on probation and committed to the custody of OYA.

On August 2, 2019, a petition was filed alleging that youth had violated the conditions of his probation, and the juvenile court placed youth in detention under ORS 419C.145. On August 9, 2019, the juvenile court held a hearing on that petition and determined that youth had violated the conditions of his probation. At that hearing, youth argued that, having adjudicated the petition, "the maximum time that [youth] can be held in detention is eight days" under ORS 419C.453,[2] and that "[no]thing in the Juvenile Code allow[s] detention time post adjudication beyond those eight days." The juvenile court rejected that argument and entered an order continuing youth's detention "until further court order, early release to OYA for placement OK," and set over disposition to August 29, 2019. At some point after the August 9, 2019, hearing, youth was released to OYA for placement.

On August 28, 2019—one day before the scheduled disposition hearing—another petition was filed alleging that youth had violated the conditions of his placement, and youth was again placed in detention under ORS 419C.145.

_____

[2] ORS 419C.453 provides, in relevant part:

"(1) Pursuant to a hearing, the juvenile court may order an adjudicated youth placed in a detention facility for a specific period of time not to exceed eight days, in addition to time already spent in the facility, unless a program plan that is in conformance with standards established by the Youth Development Council has been filed with and approved by the council, in which case the adjudicated youth may be held in detention for a maximum of 30 days in addition to time already spent in the facility, when:

"* * * * *

"(b) The adjudicated youth has been placed on formal probation for an act that would be a crime if committed by an adult, and has been found to have violated a condition of that probation."

The next day, the juvenile court held a hearing and determined that youth had violated the conditions of his placement. The court acknowledged and again rejected youth's argument that, after adjudication, the court may impose only eight days of detention, and it entered an order continuing youth's detention and setting over disposition of youth's probation violations to October 18, 2019.

On October 2, 2019, youth filed a motion to terminate commitment to OYA and release youth from detention, and a hearing on that motion was held the following day. At the hearing, youth again argued that the juvenile court lacked authority to continue youth's detention for more than eight days *after* adjudicating a probation violation petition. The court responded that

> "it's been a source of tension and legal argument over the years whether the Court can hold a youth in detention beyond eight days between the time of an admission or finding of PV and disposition. And I've taken the position that there's no legal bar on that. And so I'll stand by that [position.]"

Youth also argued for the first time that, because youth's commitment to OYA had, by that time, exceeded the three-year period of commitment provided in ORS 419C.501 for youth's 2016 misconduct, the court also lacked authority to impose any additional days of detention as a sanction for youth's probation violation.[3] After the hearing, the juvenile court entered an order terminating youth's commitment to OYA, stating that "the maximum period of commitment of [youth] to OYA allowed under ORS 419C.501 has been exceeded." The order also imposed eight days of detention as

---

[3] ORS 419C.501 provides, in relevant part:

"(1) The court shall fix the duration of any disposition made pursuant to this chapter and the duration may be for an indefinite period. Any placement in the legal custody of the Department of Human Services or the Oregon Youth Authority under ORS 419C.478 or placement under the jurisdiction of the Psychiatric Security Review Board under ORS 419C.529 shall be for an indefinite period. However, the period of institutionalization or commitment may not exceed:

"* * * * *

"(d) Three hundred sixty-four days for an act that would constitute a Class A misdemeanor if committed by an adult[.]"

a sanction for youth's August 28, 2019, probation violation and stated, in part,

> "The court rejects the youth's argument that continuing a youth in detention between a finding of probation violation and disposition, or [that] the imposition of 8 days of detention as a PV sanction under the circumstances presented here, is barred by [the Juvenile Code]."

On appeal, youth seeks in his first assignment of error a reversal of the juvenile court's determination that it could continue holding youth in detention under ORS 419C.145 *after* his probation violation allegations had already been adjudicated. Both parties assert that that issue became moot when youth's probation was terminated, but they agree that it nevertheless qualifies for review under ORS 14.175 because the issue is capable of repetition and likely to evade review.

In his second assignment of error, youth argues that the juvenile court erred when it determined that the eight days of detention imposed as a probation violation sanction did not count toward the statutory maximum periods of "institutionalization or commitment" provided in ORS 419C.501. Youth acknowledges that that issue is moot but contends that it, too, qualifies for review under ORS 14.175. The state responds that the issue is moot and does not meet the requirements for review under ORS 14.175.

## II.  ANALYSIS

We begin our analysis by addressing the issue of mootness, concluding that youth's first assignment is moot and does qualify for review under ORS 14.175, but his second assignment error, which also is moot, does not. We then turn to the merits of youth's first assignment of error, concluding that ORS 419C.145 authorizes detention of a youth only before the adjudication stage of a juvenile proceeding; it does not authorize detention of a youth between adjudication and disposition.

A.  *Mootness and Review under ORS 14.175*

As to youth's first assignment of error, we conclude that it is moot but satisfies the requirements of ORS 14.175.

Both parties acknowledge—and we agree—that the issue raised in youth's first assignment of error is moot; youth's detention, probation, and commitment to OYA have terminated, and our decision will no longer "have a practical effect on the rights of the parties." *Dept. of Human Services v. G. D. W.*, 353 Or 25, 32, 292 P3d 548 (2012) ("As a general rule, a case becomes moot when the court's decision no longer will have a practical effect on the rights of the parties.").

A moot issue may, however, be reviewed when it satisfies the requirements of ORS 14.175 and the court exercises its discretion to consider the moot issue. *Penn v. Board of Parole*, 365 Or 607, 613, 451 P3d 589 (2019). There are three requirements under ORS 14.175: (1) the party had standing to commence the action; (2) the act challenged by the party is "capable of repetition"; and (3) the challenged act is "likely to evade judicial review." ORS 14.175.

Here, both youth and the state assert—and we agree—that youth's first assignment of error satisfies all three requirements. In particular, the challenged act (*i.e.*, placement in detention "before adjudication on the merits" under ORS 419C.145) is likely to evade review, because any detention period imposed will be for a relatively short period—a number of days or a few weeks—and will, it seems, have ended during the very early stages of any appeal. We exercise our discretion to review the moot issue raised in youth's first assignment of error.

As to youth's second assignment of error, we conclude that it is moot and does not satisfy the requirements of ORS 14.175; specifically, we are not persuaded that a juvenile court's decision to not count periods of detention imposed as a probation violation sanction toward the maximum periods of "institutionalization or commitment" provided in ORS 419C.501 is likely to evade review. Youth argues that "all of the statutory maximums for misdemeanor offenses under ORS 419C.501 are under one year," but "appeals from delinquency dispositions go on for years before issuance of a written opinion." The state responds that youth's argument overlooks cases "where a youth has committed multiple offenses and the aggregate dispositional maximum is, as a result, many years," and "it overlooks all felony cases, where the

statutory maximum is five years or greater." In such cases, the state continues, "this court can review a challenge to a juvenile court's ruling that periods of detention do not count against the statutory maximums in ORS 419C.501."

We agree with the state regarding the second assignment of error. As this court recently reiterated, "To determine whether an issue is 'likely to evade review,' the question is not whether a person in youth's same circumstances would also fail to obtain appellate review, but 'whether the general type or category of challenge at issue is likely to evade being fully litigated.'" *State v. F. T.*, 316 Or App 772, 774, 503 P3d 1281 (2022) (quoting *Eastern Oregon Mining Association v. DEQ*, 360 Or 10, 17, 376 P3d 288 (2016)). The issue raised in youth's second assignment of error is not unique to youths who have been adjudicated for a single misdemeanor, and it is unlikely that that general category of challenge would evade review in cases where youths have been adjudicated for a felony or multiple offenses. *Cf. F. T.*, 316 Or App at 774 (holding that moot issue as to conditions and duration of youth's commitment to OYA was unlikely to evade review, because it was "not limited to youths who have been adjudicated solely for class A and B misdemeanors" and was unlikely to evade review "in a case where a youth had been adjudicated for both a felony and a Class B misdemeanor"). We therefore conclude that the issue raised in youth's second assignment of error is moot and does not satisfy the requirements for review under ORS 14.175.

B.   *ORS 419C.145 allows detention only before the adjudication stage.*

We turn next to the merits of the issue raised in youth's first assignment of error—*i.e.*, whether ORS 419C.145 authorizes detention of a youth only *before* adjudicating a petition or, instead, authorizes detention both before adjudication and between adjudication and disposition. Youth contends that the juvenile court erroneously construed ORS 419C.145 to allow his detention after his probation violations had been adjudicated but before entering the disposition. Youth argues that ORS 419C.145 allows detention only before adjudication on the merits, and youth had already been adjudicated on the merits when the juvenile

court continued his detention. The state responds that the juvenile court did not err, because "[t]he term 'adjudication, used in its ordinary sense, broadly applies to the decision on whether the youth committed the violation *and* the decision on how the juvenile court should respond to the violation," so "an 'adjudication on the merits' under ORS 419C.145 encompasses the juvenile court's decision as to the proper disposition for a probation violation."

The parties' dispute presents a matter of statutory construction, which we review for legal error. *State v. S.-Q. K.*, 292 Or App 836, 839, 426 P3d 659, *adh'd to as modified on recons*, 294 Or App 184, 426 P3d 258, *rev den*, 364 Or 209 (2018). "In conducting our review, our job is to ascertain the legislature's intent," which we do "by examining the statutory text, context, and any pertinent legislative history." *Id.* We are mindful that, in construing a statute, our task "is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted." ORS 174.010. We begin with the relevant statutory text, as it "is the best evidence of the legislature's intent." *Zweizig v. Rote*, 368 Or 79, 85, 486 P3d 763 (2021) (internal quotation marks omitted).

1.   *Text*

ORS 419C.145 provides, in relevant part:

"(1)   A youth may be held or placed in detention before adjudication on the merits if one or more of the following circumstances exists:

"* * * * *

"(d)   The youth is currently on probation imposed as a consequence of the youth previously having been found to be within the jurisdiction of the court under ORS 419C.005, and there is probable cause to believe the youth has violated one or more of the conditions of that probation[.]"

The parties' arguments focus in particular on the phrase "before adjudication on the merits." The juvenile code does not define the word "adjudication" or the phrase "on the merits," so we examine dictionaries to discern their ordinary meaning. *S.-Q. K.*, 292 Or App at 840.

The ordinary meaning of "adjudicate" includes "to settle finally (the rights and duties of the parties to a court case) on the merits of issues raised," *Webster's Third New Int'l Dictionary* 27 (unabridged ed 2002), and "[t]o rule on judicially," *Black's Law Dictionary* 47 (9th ed 2009). Similarly, "adjudication" is defined as "a determination, decision, or sentence esp. without imputation of guilt (as a decree in bankruptcy or the disposition of a juvenile delinquent." *Webster's* at 27. And an "adjudication hearing" is, "[i]n a juvenile-delinquency case, a hearing at which the court hears evidence of the charges and makes a finding of whether the charges are true or not true.—Also termed *adjudicatory hearing; adjudicatory proceeding.*" *Black's* at 788 (emphasis in original).

Regarding the phrase "on the merits," relevant definitions of "merits" include "the intrinsic rights and wrongs of a legal case as determined by matters of substance in distinction from matters of form **:** the strict legal rights of the parties as distinguished from considerations depending on practice or jurisdiction <the plaintiff . . . is entitled to have its claim decided here on its ~s —T. M. Maddes>," *Webster's* at 1414, and "[t]he elements or grounds of a claim or defense; the substantive considerations to be taken into account in deciding a case, as opposed to extraneous or technical points, esp. of procedure <trial on the merits>," *Black's* at 1079.

Those definitions suggest that, in the juvenile delinquency context, detention "before adjudication on the merits" refers to detention imposed on a youth before the juvenile court's determination that allegations of a youth's misconduct are true (or not true). Those definitions are not, however, particularly helpful to determining whether the term "adjudication," as used in ORS 419C.145, encompasses not only the determination as to whether a youth has committed a violation, but also the determination as to the appropriate response for that violation.

We turn, then, to examining the relevant statutory context.

2.  *Context*

Statutory context includes "prior judicial opinions interpreting the same or similar language." *State v. Lam*, 176

Or App 149, 154, 29 P3d 1206 (2001). This court previously construed the term "adjudication" as used in ORS 419C.450, which requires a district attorney to present any restitution evidence "prior to or at the time of adjudication."[4] *See State v. M. A. S.*, 302 Or App 687, 689, 462 P3d 284 (2020). In *M. A. S.*, we determined that "adjudication of [the] youth was completed at the conclusion of the adjudicatory hearing, and it was too late for the district attorney to present restitution evidence to the court at the dispositional hearing." *Id.* at 703. In reaching that conclusion, we explained that juvenile delinquency proceedings have

> "two stages that are roughly comparable to conviction and sentencing in adult criminal cases. The first is the juvenile court's determination that the youth committed an act that would be a crime if committed by an adult. That determination is termed an '*adjudication*,' and it is analogous to an adult conviction. The second is the juvenile court's determination of the proper consequences that should follow from the adjudication. That determination is called the '*disposition*,' and it is analogous to an adult sentencing."

*Id.* at 701 (quoting *State v. Barrett*, 350 Or 390, 401-02, 255 P3d 472 (2011) (citations omitted; emphases added)). Under that explanation, the term "adjudication" in ORS 419C.145 would refer to the trial-like first stage of a juvenile delinquency proceeding (*i.e.*, the "adjudication" stage), which is distinct and separate from the second, "disposition" stage of the proceeding that occurs after adjudication.

That understanding finds support in additional statutory context, including other "related statutes," along with "prior enactments" of the statute at issue or related statutes and "the historical context of th[ose] enactments." *Dalbeck v. Bi-Mart Corp.*, 315 Or App 129, 135, 500 P3d 711 (2021). Related statutes indicate that the term "adjudication" is a distinct stage of a juvenile proceeding that is

---

[4]  ORS 419C.450(1)(a) provides, in relevant part:

"In any case within the jurisdiction of the juvenile court pursuant to ORS 419C.005 in which the adjudicated youth caused another person any physical, emotional or psychological injury or any loss of or damage to property, the victim has the right to receive prompt restitution. The district attorney shall investigate and present to the court, prior to or at the time of adjudication, evidence of the nature and amount of the injury, loss or damage."

separate from the "disposition" stage. Prior enactments of
ORS 419C.145 further indicate that the legislature intended
detention "before adjudication on the merits" to mean deten-
tion only before the trial-like first stage of a juvenile pro-
ceeding (*i.e.*, the "adjudication" stage), not between adjudica-
tion and disposition.

Regarding related statutes, the juvenile delin-
quency code includes several provisions indicating that the
"adjudication" stage of a juvenile proceeding is distinct from
the "disposition" stage. For example:

- "[T]he purposes of the Oregon juvenile justice system
  from apprehension forward are to protect the public
  and reduce juvenile delinquency and to provide fair and
  impartial procedures for the initiation, *adjudication*
  and *disposition* of allegations of delinquent conduct."
  ORS 419C.001 (emphases added).

- Appearance in a proceeding is allowed by telephone or
  closed-circuit television except where that "proceeding
  is a contested *adjudication*" or "the proceeding is a con-
  tested *dispositional* hearing." ORS 419C.025(2)(a), (c)
  (emphases added).

- "At the *adjudication* stage of a delinquency proceeding,
  the parties to the proceeding are the youth and the
  state, represented by the district attorney or the juve-
  nile department. At the *dispositional* stage of a delin-
  quency proceeding, the following are also parties ***[.]"
  ORS 419C.285(1) (emphases added).

- If a youth is summoned and fails to appear at a hearing,
  "the court may *adjudicate* the citation or petition and
  enter a *disposition* without a hearing." ORS 419C.420
  (emphases added).

Those provisions indicate that "'adjudication' and 'disposi-
tion' of the allegations are understood to refer to distinct
phases of delinquency proceedings," *M. A. S.*, 302 Or App
at 701, and that, had the legislature intended the phrase
detention "before adjudication on the merits" to mean deten-
tion before *both* the adjudication *and* the disposition stages,
it would not have chosen to omit the term "disposition" from
ORS 419C.145. *Cf. PGE v. Bureau of Labor and Industries*,
317 Or 606, 611, 859 P2d 1143 (1993) ("[U]se of a term in

one section and not in another section of the same statute indicates a purposeful omission[.]").

Regarding prior enactments of ORS 419C.145, those enactments further indicate that the legislature intended detention "before adjudication on the merits" to mean detention only before the trial-like first stage of a juvenile proceeding, not between adjudication and disposition. Again, current ORS 419C.145 provides, in relevant part:

"(1)   A youth may be held or placed in detention before adjudication on the merits if one or more of the following circumstances exists:

"* * * * *

"(d)   The youth is currently on probation imposed as a consequence of the youth previously having been found to be within the jurisdiction of the court under ORS 419C.005, and there is probable cause to believe the youth has violated one or more of the conditions of that probation[.]"

Prior versions of that statute were virtually identically worded as far back as *former* ORS 419.601 (1989),[5] which provided, in part:

"(1)   No child may be held or placed in detention before adjudication on the merits unless on or more of the following circumstances exists:

"* * * * *

"(d)   The child is currently on probation imposed as a consequence of the child previously having been found to be within the jurisdiction of the court pursuant to [*former*] ORS 419.476(1)(a) and there is probable cause to believe the child has violated one or more of the conditions of that probation."

That statute was enacted pursuant to Senate Bill (SB) 562 (1989), *see* Or Laws 1989, ch 1033, § 1, and the historical context of that enactment indicates that the

---

[5] *Former* ORS 419.601 was repealed and replaced by ORS 419C.145 (1993). *See* Or Laws 1993, ch 33, § 173; *see also* Senate Bill 257 (1993). Notably, "Senate Bill 257 [wa]s a recodification of the juvenile code containing no substantive law revisions." Testimony, Senate Committee on Judiciary, SB 257, Feb 15, 1993, Ex B (statement of Judge Stephen B. Herrell, Chair of the Juvenile and Family Justice Project, which drafted SB 257 (1993)).

legislature understood detention "before adjudication on the merits" to mean detention imposed prior to the first, trial-like stage of juvenile proceedings (*i.e.*, the "adjudication" stage), as distinct from the "disposition" stage that occurs after adjudication.

For one, those working on SB 562 represented to the legislature that the bill concerned detention of a youth before a "trial" or "adjudication hearing." Judge Stephen B. Herrell, whose efforts informed the drafting and revision of SB 562, explained, "[I]t is not intended by SB 562 that children spend a longer time in *pre-trial detention*. Our goal, to the contrary, should be to shorten the time *between arrest and trial*." Testimony, Senate Committee on Judiciary, SB 562, Mar 31, 1989, Ex F (statement of Judge Stephen B. Herrell (emphases added)).

Cory Streisinger—legal counsel for then-Governor Goldschmidt—explained that "SB 562 would revise our standards for the pre-adjudication detention of juveniles" and that "pre-adjudication detention may be used *** if there is reason to believe the juvenile will not attend the adjudication hearing." Testimony, House Committee on Judiciary, Subcommittee on Family Justice, SB 562, May 26, 1989, Ex X (statement of Cory Streisinger).

Patrick K. Callahan, a senior deputy district attorney for Multnomah County, stated that "[t]he bill proposes to allow juveniles to be detained no more than 28 days *before trial* without good cause shown[.]" Testimony, House Committee on Judiciary, Subcommittee on Family Justice, SB 562, June 2, 1989, Ex Q (statement of Patrick K. Callahan (emphasis added)); *see also* Testimony, Senate Committee on Judiciary, SB 562, Mar 17, 1989, Ex K (statement of Muriel Goldman, Multnomah County Juvenile Court Advisory Committee) ("[W]e are concerned about *** time limits for holding youth following a detention hearing, but *prior to the adjudication hearing*." (Emphasis added.)).

Put simply, SB 562 concerned "[t]he provisions of the juvenile code relating to preadjudicative detention, namely holding a child in detention *before a hearing on a petition*." Staff Measure Summary, House Committee on Judiciary, SB 562, May 26, 1989 (emphasis added); *see also Brownstone*

*Homes Condo. Assn. v. Brownstone Forest Hts.*, 358 Or 223, 236, 363 P3d 467 (2015) (legislative history includes staff measure summary).

In addition, legislators and stakeholders discussing SB 562 repeatedly contrasted the detention *before* adjudication provided in that bill with the detention *after* adjudication provided in a companion bill, Senate Bill 356 (1989).[6] For example, Senator Joyce Cohen, chair of the Senate Judiciary Committee, explained that "[SB] 562 has to do with how long you can hold someone until you bring them to trial * * *. And [SB] 356 is a time limit on how much—*after* they've been adjudicated—you can keep them in a detention center." Tape Recording, Senate Committee on Judiciary, SB 562, May 2, 1989, Tape 105, Side B (statement of Senator Joyce Cohen (emphasis added)); *see also* Tape Recording, Senate Committee on Judiciary, SB 562, May 2, 1989, Tape 105, Side B (statement of Senator Robert Shoemaker) ("[SB] 356 * * * is your detention *following* conviction, if I can use that word, as opposed to detention *prior* to that." (Emphasis added.)).

Carol Turner, member of the board of directors of the Oregon School Board Association, testified that the "bills you are discussing today deal with two aspects of a complex situation * * *. SB 562, regarding preadjudicatory detention * * * [and] SB 356, deal[ing] with postadjudicatory

---

[6] The detention provisions in SB 356 (1989) were codified at former ORS 419.507(4)(a) (1989) and provided:

"Pursuant to hearing, the juvenile court may order a child 12 years of age or older placed in a detention facility for children for a specific period of time not to exceed eight days, in addition to time already spent in the facility, unless a program plan that is in conformance with standards established by the state's Oregon Community Children and Youth Services Commission has been filed with and approved by the commission, in which case the child may be held in detention for a maximum of 30 days in addition to time already spent in the facility, when:

"(A) The child has been found to be within the jurisdiction of the juvenile court by reason of having committed an act which would be a crime if committed by an adult; or

"(B) The child has been placed on formal probation for an act which would be a crime if committed by an adult, and has been found to have violated a condition of that probation."

*Former* ORS 419.507(4)(a) (1989) is the statutory predecessor to the nearly identically worded current ORS 419C.453. *See* 318 Or App at 24 n 2.

detention." Testimony, Senate Committee on Judiciary, SB 562, Mar 17, 1989, Ex J (statement of Carol Turner).

Julie H. McFarlane, a senior attorney from the Juvenile Rights Project, observed that "SB 562 appears to allow for detention * * * until a petition on the matter is adjudicated," whereas "SB 356 [allows for] detention after adjudication of a delinquency or probation violation petition." Testimony, Senate Committee on Judiciary, SB 562, Mar 16, 1989, Ex O (statement of Julie H. McFarlane); *see also* Testimony, Senate Committee on Judiciary, SB 562, Mar 27, 1989, Ex F (statement of Judge Stephen B. Herrell) (referring to "SB 562—preadjudication detention" and "the post adjudication detention bill SB 356").

The foregoing context shows that detention "before adjudication on the merits," as used in SB 562, referred to holding a youth in detention prior to the trial-like first stage of a juvenile delinquency proceeding—*i.e.*, the adjudication stage, whereas detention *after* the trial-like adjudication hearing on a petition was separately authorized by a companion bill, SB 356.

3.   *Legislative history*

Having discussed text and context, we note that we have examined more recent legislative history relevant to ORS 419C.145, and nothing in that history suggests to us that the legislature intended to alter the meaning of the phrase "before adjudication on the merits" or intended the term "adjudication" to refer to *both* the adjudication stage of a juvenile proceeding *and* the disposition stage.

### III.   CONCLUSION

On youth's first assignment of error, we conclude that the text, context, and legislative history of ORS 419C.145 show that the legislature intended detention "before adjudication on the merits" to mean holding a youth in detention only before the trial-like adjudication stage of a juvenile proceeding; under ORS 419C.145, detention "before adjudication on the merits" does not encompass detention of a youth after adjudication, which includes the period between

adjudication and disposition.[7] On youth's second assignment of error, we conclude that the issue raised therein is moot and does not satisfy the requirements for review under ORS 14.175.

Determination that youth may be held in detention under ORS 419C.145 after adjudication reversed; otherwise affirmed.

---

[7] That conclusion should not be read to imply that a juvenile court is categorically without authority to impose detention upon a youth once adjudication of a petition is completed. *See, e.g.*, ORS 419C.453(1)(a), (b) (providing that, after a hearing, a juvenile court may place a youth in detention for up to eight days or, if an appropriate program plan has been filed, up to 30 days, when a youth "has been found to be within the jurisdiction of the juvenile court by reason of having committed an act that would be a crime if committed by an adult" or "has been placed on formal probation for an act that would be a crime if committed by an adult, and has been found to have violated a condition of that probation").